**PENSION BENEFIT GUARANTY CORPORATION, Plaintiff,**

v.

**FEL CORPORATION, Defendant.**

**Civ. No. 92–3401(CSF).**

United States District Court,
D. New Jersey.

Sept. 2, 1992.

Office of General Counsel, Pension Ben. Guar. Corp. by Denise L. Yegge, Steptoe & Johnson by Frank H. McCulloch, II, Washington, D.C., for plaintiff.

Nirolaus, Hohenadel & Umbenhader by Richard G. Greiner, Lancaster, Pa., Cole, Schotz, Bernstein, Meisel & Forman by Glenn R. Kazlow, Hackensack, N.J., for defendant.

CLARKSON S. FISHER, District Judge.

Before the court is an application on an order to show cause filed by the Pension Benefit Guaranty Corporation ("PBGC"). PBGC seeks an order terminating the FEL

Corporation Pension Plan for Hourly Employees, the Murlin Manufacturing Corporation Hourly Employees' Retirement Plan, and the Murlin Manufacturing Salaried Employees' Retirement Plan (the "plans"). PBGC also requests that this court establish August 6, 1992, as the plans' termination date,[1] and appoint PBGC as trustee of the plans. For the reasons set forth below, PBGC's application is granted.[2]

The PBGC is a United States government corporation that administers a self-financing pension plan termination insurance program under Title IV of the Employee Retirement Income Security Act of 1974 ("ERISA"). 29 U.S.C. §§ 1301–1461 (1985 & Supp.1992). The PBGC guarantees certain benefits under defined benefit pension plans covered by Title IV of ERISA. 29 U.S.C. §§ 1321–1322. To pay for the cost of this insurance, all covered pension plans must pay PBGC an annual premium. 29 U.S.C. § 1307. Additionally, the statute imposes liability upon employers whose plans are terminated causing PBGC to be liable on its guaranty under the statute.

■ An employer may terminate a pension plan that lacks sufficient assets to satisfy its liabilities for benefits under the plan. *See* 29 U.S.C. 1341(c). Alternatively, the statute permits the PBGC to terminate plans without the consent of the administrator under certain conditions, including when the PBGC determines that "the possible long-run loss of the corporation with respect to the plan may reasonably be expected to increase unreasonably if the plan is not terminated." 29 U.S.C. § 1342(a)(4). When the PBGC determines that a pension plan covered under Title IV of ERISA should be terminated, the PBGC is required, upon notice to the plan administrator, to apply to an appropriate United States district court for the appointment of a trustee. The trustee may be the PBGC itself, pending a final decree adjudicating that the plan must be terminated and a statutory trustee appointed. 29 U.S.C.

§§ 1342(b), (c). The statute explicitly provides for expedited proceedings:

> If within 3 business days after the filing of an application under this subsection, or such other period as the court may order, the administrator of the plan consents to the appointment of a trustee, or fails to show why a trustee should not be appointed, the court may grant the application and appoint a trustee....

29 U.S.C. § 1342(b)(1).

Thereafter, the court is to grant a decree adjudicating the plan terminated if termination of the pension plan is necessary to protect the interests of the participants, or to avoid any unreasonable deterioration in the financial condition of the plan or any unreasonable increase in the PBGC's liability for the pension benefits insured by Title IV of ERISA. 29 U.S.C. § 1342(c). When a plan is terminated and the PBGC is appointed statutory trustee, plan assets are transferred to the PBGC. The PBGC then pays plan benefits guaranteed under Title IV of ERISA, making up the deficiency in plan assets out of its own funds. 29 U.S.C. §§ 1322, 1361.

The plans involved in the instant matter are qualified defined benefit plans that provide retirement income for certain employees of FEL Corporation ("FEL"), and former employees of Murlin Manufacturing Corporation, which ceased its business operations several years ago. Although FEL is still operating, it froze its plan on June 1, 1988, thereby halting the accrual of additional benefits for all participants. Continental Bank, Chicago, Illinois, and Central Jersey Bank, Freehold, New Jersey, hold the plans' assets. FEL is the administrator of the plans within the meaning of 29 U.S.C. § 1301(a)(1).

In support of its request for termination, the PBGC explains that FEL is a member of a controlled group of corporations that includes a corporation known as Harvard Industries, Inc. ("Harvard") and nine of its

---

**1.** FEL Corporation has not objected to August 6, 1992, as the termination date.

**2.** On August 26, 1992, on motion filed by PBGC, and with the FEL Corporation's consent, this court ordered the PBGC administrative record to be sealed. FEL Corporation filed no motion to supplement the administrative record.

direct and indirect wholly-owned subsidiaries, within the meaning of 29 U.S.C. § 1301(a)(14). Each member of a controlled group is liable for the minimum funding contributions required under 29 U.S.C. § 1082 and IRC § 412 and for the plan's unfunded benefit liabilities upon termination. 29 U.S.C. § 1362. On April 11, 1991, an involuntary petition for relief under Chapter 11 of Title 11 of the Bankruptcy Code was filed against Harvard. On May 2, 1991, voluntary petitions for relief under Chapter 11 of the Bankruptcy Code were filed on behalf of Harvard and its subsidiaries. Harvard's plan of reorganization was confirmed by order of the bankruptcy court on August 10, 1992, and its effective date is August 30, 1992. As a result, the PBGC determined that the plans should be terminated because the possible long-run loss of the PBGC with respect to the plans may reasonably be expected to increase unreasonably if the plans are not terminated. *See* 29 U.S.C. § 1342(a)(4).

 FEL asserts that it is entitled to a *de novo* review with regard to the PBGC's decision to terminate the plans. As an administrative agency, the PBGC is subject to the requirements of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706. The APA contains two different standards of judicial review with regard to administrative determinations. The APA permits a court to set aside an administrative determination only on a showing that the determination is either (1) "arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), or (2) "unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court," 5 U.S.C. § 706(2)(F).

FEL argues that the various subsections of 29 U.S.C. § 1342, which prescribe the procedure the PBGC is to use to terminate a plan without the consent of the administrator, contemplate a full and complete review by this court. I disagree. The Supreme Court of the United States recently applied the "arbitrary and capricious" standard of 5 U.S.C. § 706(2)(A) to a determination of the PBGC. *See Pension Benefit*

*Guaranty Corp. v. LTV Corp.*, 496 U.S. 633, 656, 110 S.Ct. 2668, 2681, 110 L.Ed.2d 579 (1990) (the court found "that the PBGC's failure to consider all potentially relevant areas of law did not render its restoration decision arbitrary and capricious"); *see also In re Pan American World Airways, Inc. Coop. Retirement Income Plan*, 777 F.Supp. 1179, 1181 (S.D.N.Y.1991) (applying the "arbitrary and capricious" standard); *Saramar Aluminum Co. v. Pension Plan for Employees of Aluminum Industry & Allied Industries*, 782 F.2d 577, 583 (6th Cir.1986) (PBGC's decision that a plan was not a multiemployer plan within the meaning of ERISA is "entitled to some deference by the courts."). Therefore, this court shall apply the "arbitrary and capricious" standard to the PBGC's determination in the instant matter. To do otherwise "would be to depart from the usually applicable judicial deference to the expertise of an administrative agency...." *In re Pan American World Airways*, 777 F.Supp. at 1181–82.

 In applying this standard, this court "must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 823–24, 28 L.Ed.2d 136 (1971). FEL argues that termination is inappropriate because none of the reportable events, which plan administrators must report to the PBGC, has occurred. *See* 29 U.S.C. § 1343. The PBGC, on the other hand, argues that the agency did receive notice of a reportable event when Harvard filed a notice with respect to the initiation of its bankruptcy proceedings. (PBGC's reply brief at 12–13.) Nonetheless, the statute does not limit the PBGC to terminating plans only after reportable events have occurred. In fact, the statute permits the PBGC to terminate a plan "whenever it determines that" the possible long-run loss to the corporation may increase unreasonably. *See* 29 U.S.C. § 1342. Therefore, it is beneficial to look at the factors that PBGC considered in

making its determination to see if the factors are relevant.

The PBGC considered the effect of Harvard's bankruptcy. If the plans are terminated after the effective date of the Harvard's reorganization plan, Harvard and its subsidiaries will be severed from the controlled group and will bear no responsibility for any subsequent termination liability to PBGC resulting from the plans. On the other hand, if the plans are terminated prior to the effective date of the reorganization, the Harvard and its subsidiaries would incur termination liability. *See* 29 U.S.C. § 1362. Under the reorganization plan, Harvard and its subsidiaries would pay, over a two-year period, the PBGC claims for termination liability as general unsecured claims. (Adm.Rec. at 81–82.)

Additionally, PBGC determined that if the plans are not terminated now, they will likely be terminated in the future. FEL's financial condition is poor and deteriorating. FEL is "technically insolvent" with a "current negative worth in excess of $15,-000,000...." (Adm.Rec. at 214.) FEL has operated at a loss for at least two years and is currently $10 million in arrears on its rent. The real estate on which FEL conducts its business is pledged as security, by another member of the controlled group, for three separate mortgages totaling approximately $38 million. FEL itself has an outstanding loan of approximately $10 million, secured by all of its assets. All four loans are in default. (Adm.Rec. at 42). PBGC determined that if FEL were forced into bankruptcy, it would probably not have sufficient assets to pay unsecured creditors, which likely would include PBGC claims for termination liability. Additionally, PBGC determined that the other members of the controlled group have no net worth. (Adm.Rec. at 213–14.)

In short, PBGC decided that if it did not terminate the plans prior to the effective date of the Harvard's reorganization plan, the plans would likely be terminated in the future at a time when FEL and the remaining members of the controlled group could pay little if any of the termination liability. As a result, PBGC determined that the possible long-run loss to PBGC with respect to the plans may reasonably be expected to increase unreasonably if PBGC failed to terminate the plans while Harvard was still a member of the controlled group. The factors on which PBGC based this determination strike this court as relevant, and the determination reflects no clear error in judgment. As a result, the PBGC's determination is not arbitrary and capricious and, thus, shall not be disturbed by this court.

The PBGC's application is granted. No costs.