United States Court of Appeals,

Fifth Circuit.

No. 93-1681.

In the Matter of ESCO MANUFACTURING, CO., Debtor.

PENSION BENEFIT GUARANTEE CORP., Appellee,

v.

Gregg PRITCHARD, Trustee in Bankruptcy For Esco Manufacturing, Co., Appellant.

Sept. 29, 1994.

Appeal from the United States District Court for the Northern District of Texas.

Before GOLDBERG, HIGGINBOTHAM and EMILIO M. GARZA, Circuit Judges.

GOLDBERG, Circuit Judge:

This case brings to the fore the interrelationship between the bankruptcy laws protecting debtors[1] and the pension laws protecting pension plan participants.[2] Our analysis of the independent existence and cross fertilization of these two major Congressional enactments leads us to prohibit any attempt to utilize the bankruptcy laws to escape ERISA's protection of pension plan participants. We hold that a Chapter 7 bankruptcy Trustee remains subject to the debtor's statutory obligation to terminate its pension plan in accordance with the specific procedures established by ERISA. In so complying, we find that the Trustee does not exceed the limits of proper trustee activity set out by the

_____

[1]Title 11 of the Bankruptcy Code, 11 U.S.C. §§ 101-1501.

[2]Title IV of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1301-1461.

1

Bankruptcy Code.

                                    I.

Esco Corporation ("Esco" or the "Debtor") filed for Chapter 11 bankruptcy protection in April of 1990. In January of 1991, Esco's mortgage foreclosed on the Esco factory and the company ceased all operations. In June of the same year, the case was converted into a Chapter 7 liquidation and the bankruptcy court appointed Gregg Pritchard as Trustee of the Esco estate.

Previously, in January of 1976, Esco had established a pension plan for its employees. In 1990, when the corporation filed for bankruptcy, this plan reported assets of $527,557 but also reported liabilities of approximately $748,468 in the form of vested benefits owing to employees.[3] At no time during the bankruptcy proceedings did the Debtor or the Trustee notify the Pension Benefit Guarantee Corporation ("PBGC"), the government corporation charged with protecting pension benefits, of Esco's bankruptcy as is required by ERISA, 29 U.S.C. § 1343(b)(9). The PBGC was eventually notified of the bankruptcy, however, when Calloway Pension Services, a professional actuary serving as a consultant to the plan, sought help when the pension benefits were not paid by Esco.

In October of 1991, the Chapter 7 trustee, Pritchard, filed a Notice of Intention to Abandon the pension plan arguing that the plan was of little value to the estate and that the plan should be

_____

[3]A proof of claim has been filed by the Pension Benefit Guarantee Corporation against the bankruptcy estate calculating the deficiency at $576,400.

abandoned as burdensome under the authority of 11 U.S.C. § 554(a).[4] The PBGC filed an objection, asserting that the Trustee was prohibited from abandoning the estate's statutory obligations to the pension plan under Title IV of ERISA.[5] The conflict that here arose between the parties illuminates the confrontation between the pension and bankruptcy statutes central to the resolution of this controversy.

The bankruptcy court granted the Trustee's motion in February of 1992, holding that the plan was not property of the estate and that even if it was later deemed to be so, any obligations held by the Trustee could be abandoned. The PBGC appealed this decision to the district court. By order entered May 27, 1993, the district court, although agreeing that the pension plan was not part of the debtor's estate, concluded that the Title IV obligations of the plan could not be abandoned. The court then held that the ERISA termination obligations are "claims" against the estate that the Trustee is obligated to resolve. 11 U.S.C. §§ 101(5), 704(1). The district court, therefore, required the Trustee to terminate the plan so that the PBGC could fulfill its Title IV insurance

_____

[4]The Trustee also noticed his intention to abandon the employee profit sharing plan. The decision of the district court granting the Trustee's motion to do so is not an issue in this appeal.

[5]Title IV imposes various obligations on the employer and plan administrator which must be fulfilled in order to complete a successful termination of an ERISA-covered pension plan. They include a duty to terminate the plan in accordance with this section, to notify the PBGC after the filing of bankruptcy, to notify all affected parties of the impending termination, and to comply with various reporting requirements as to the net assets and liabilities of the plan. 29 U.S.C. § 1341.

obligations to the plan participants and beneficiaries.  Pritchard appeals that decision.

II.

First, we provide a little background.  Title IV of ERISA protects the pension benefits of workers enrolled in ERISA-covered plans through the administration of the PBGC, a government corporation modeled after the Federal Deposit Insurance Corporation.[6]  *See Pension Benefit Guaranty Corp. v. LTV Corp.,* 496 U.S. 633, 636-38, 110 S.Ct. 2668, 2671, 110 L.Ed.2d 579 (1990).  When a plan covered by Title IV terminates and has insufficient assets to pay promised pension obligations, the PBGC steps in as trustee of the plan and guarantees payment of certain benefits to the plan participants.[7]  *Id.*  The PBGC uses the existing plan assets to cover as much as it can of the benefit obligations asserted against the plan and then adds its own funds to insure payment of the remaining vested benefits.  *Id.;* 29 U.S.C. §§ 1322, 1344.  The PBGC finances this insurance program for underfunded plans by requiring employers that maintain ongoing pension plans to pay annual premiums.  29 U.S.C. §§ 1306-07.[8]

Plans may either be terminated voluntarily by an employer or

---

[6]The PBGC insures the pension benefits of 40 million American employees in 85,000 private pension plans.  Daniel Keating, *Chapter 11's New Ten-Ton Monster:  The PBGC and Bankruptcy,* 77 Minn.L.Rev. 803, 806-807 (1993).

[7]The PBGC covers only those benefits that have vested.  29 U.S.C. § 1322.

[8]The PBGC's insurance fund is also financed through recoveries garnered from employers who terminate underfunded plans.  29 U.S.C. § 1345.

involuntarily by the PBGC. *LTV,* 496 U.S. at 638-40, 110 S.Ct. at 2672; 29 U.S.C. §§ 1341-42. The employer may voluntarily terminate a plan in two ways. If the employer has sufficient assets to pay all of the plan's benefit commitments, that employer may terminate the plan without implicating PBGC insurance responsibilities. This is called a "standard" termination. *Id.* If the plan's assets are not sufficient to pay all of the benefits owed and thus the termination will implicate the PBGC's insurance function, the employer must demonstrate that it is in financial "distress" as defined in 29 U.S.C. § 1341(c) before it may terminate the plan. Resort to Chapter 7 liquidation proceedings is one way that the employer can demonstrate financial "distress". 29 U.S.C. § 1341(c)(2)(B)(i). Involuntary terminations are initiated by the PBGC who may petition a district court for the appropriate declarations. 29 U.S.C. § 1342.

The vital question in the case before us today is whether the Trustee has an obligation to execute the relatively simple task of terminating Esco's pension plan and thereby activating the PBGC's many responsibilities. The synergistic relationship between the bankruptcy estate and the PBGC in protecting the beneficiaries of the pension plan is existential and someone must have the right and the power to energize it. In this way, Title IV of ERISA can perform its central role in protecting the financial health of many of our nation's employees as they enter retirement.

## III.

In this case we must address whether a bankruptcy trustee can

5

be compelled to take control of and terminate a debtor's pension plan in order to allow the PBGC to assume the various administrative and financial obligations necessary to protecting the plan beneficiaries. This controversy requires us to probe the relationship between the Bankruptcy Code and ERISA. Esco, the original sponsor of the plan, is in Chapter 7 bankruptcy. The attempt by the Trustee to abandon the plan forces us to decide whether the responsibility of terminating the plan may be placed upon the bankruptcy trustee when the plan assets, by all admissions, are separate and apart from the bankruptcy estate. We find that the Chapter 7 liquidation of an employer does not dissipate the estate's responsibility to its former employees and that the trustee remains responsible for carrying out the termination obligations.[9]

Pritchard argues that as bankruptcy trustee, he has narrowly circumscribed duties that do not encompass the administrative responsibilities that the PBGC wishes to impose. Further, Pritchard asserts that, as Chapter 7 trustee, he owes his allegiance to the bankruptcy estate alone and cannot be made responsible to third parties such as former employees who will be receiving pension benefits under the bankrupt company's pension plan. Any obligation to terminate the pension plan would, he argues, either exceed his job description as trustee or infringe on his primary obligation to the bankruptcy estate and its creditors.

The PBGC counters that the filing of a bankruptcy petition

---

[9]*See supra,* note 5 for an explanation of these obligations.

6

does not suspend the obligations imposed by ERISA, including the responsibility to terminate a pension plan prior to the PBGC's intervention. We find this to be the far more weighty concern, and the one most easily supported by the case law. ERISA speaks to the specific subject of pension plans and tells trustees and employers that termination of a plan at the onset of bankruptcy is essential to the PBGC's accomplishment of its obligations.

The PBGC is not a "brooding omnipresence in the sky." It exists as a real, operating agency with responsibility over the pension benefits of millions of workers. The PBGC, to perform its essential functions, must be advised by the entity in the primary position to do so, that the pension plan will require the invocation of the PBGC's insurance responsibilities. We therefore conclude that the bankruptcy trustee remains responsible for complying with the ERISA obligations which were previously part of the debtor's ongoing corporate concern.

A pension plan must be terminated prior to the assumption of insurance responsibilities by the PBGC. Congress has expressly provided that the procedures set out in ERISA are the sole and exclusive means for terminating a pension plan. 29 U.S.C. § 1341(a)(1)[10]; *see also* H.R.Rep. No. 300, 99th Cong., 1st Sess. 289

---

[10]29 U.S.C. § 1341(a)(1) provides:

(1) Exclusive means of plan termination

Except in the case of a termination for which proceedings are otherwise instituted by the corporation as provided in section 1342 of this title, a single-employer plan may be terminated only in a standard termination under subsection (b) of this

(1985), *reprinted in* 1986 U.S.C.C.A.N. 756, 940 ("[T]he Committee intends that ERISA provide the sole and exclusive means under which a qualified pension plan may be terminated."). We therefore cannot allow the bankruptcy abandonment procedures to be used to concoct an alternative method of terminating pension plans. The responsibility for terminating the pension plan does not evaporate after the bankruptcy of the employer and the placement of the estate in Chapter 7 liquidation proceedings. A company cannot simply file for bankruptcy and abandon a pension plan—nor the pension rights of its former employees—without meeting ERISA obligations for administering and terminating the plan. *See e.g., supra, LTV v. PBGC,* 496 U.S. at 655-57, 110 S.Ct. at 2681 (upholding PGBC's ban on "follow-on" plans in which corporations abandon their pension plan obligations in order to collect PBGC insurance and then commence a new pension plan arrangement identical to the first but without the unpaid liabilities).

In 1986, Congress added the "exclusive means of termination" provision to Title IV and reaffirmed its intention that the ERISA provisions pertaining to plan termination should apply to a debtor's bankruptcy estate.[11] In passing this legislation, Congress sought to ensure that the commencement of Chapter 7 proceedings

_____

section or a distress termination under subsection (c) of this section.

[11]The Single-Employer Pension Plan Amendment Act of 1986, P.L. 99-272, 100 Stat. 237 (1986) ("SEPPAA").

8

would not wipe out the debtor's pension obligations.[12]  We cannot give credence to Pritchard's assertion, therefore, that the plan sponsor's bankruptcy estate has no further obligation with respect to the pension plan.[13]  In enacting SEPPAA, Congress made clear its intention that a pension plan may not be deserted by an employer except through certain defined procedures, even if that employer has filed for the protection of federal bankruptcy law.

Pritchard responds that had Congress intended a bankruptcy trustee to perform the sort of obligations that the PBGC wishes to impose in the instant case, it would have included the administrative duty of terminating a debtor's pension plan among the responsibilities which are specifically set out in the Bankruptcy Code, 11 U.S.C. § 704.  Section 704 of the Bankruptcy Code establishes the various statutory duties of a bankruptcy

---

[12]This exclusive means provision was enacted in response to an earlier bankruptcy court decision that allowed the bankruptcy estate to reject a pension plan as an executory contract. *In re Bastian Co.,* 45 B.R. 717 (Bankr.W.D.N.Y.1985).  The legislative history of SEPPAA explain that "a recent case before the U.S. Bankruptcy Court for the Western District of New York, *In re Bastion Company, Inc.* (No. 83-21071, Jan. 16, 1985), which held that ERISA does not impair other Federal law, and therefore, a pension plan can be rejected as an executory contract, was incorrectly decided."  H.R.Rep. No. 300, 99th Cong., 1st Sess. 289 (1985), *reprinted in* 1986 U.S.C.C.A.N. 756, 940.

[13]Indeed, 29 U.S.C. § 1343(b)(9) of ERISA obligates the employer to notify the PBGC when any "event occurs which the corporation determines may be indicative of a need to terminate the plan."  In addition, 29 U.S.C. § 1342(e) recognizes the capacity of the PBGC to maintain proceedings intended to involuntarily terminate a plan notwithstanding the pendency "in the same or any other court of any bankruptcy."  The conclusion is obvious that Congress has, through these provisions, asserted the continuing existence of a bankruptcy estate's ERISA obligations once a corporation has filed for bankruptcy.

trustee and Pritchard points out that taking control of and terminating a debtor's pension plan is not among the enumerated obligations. 11 U.S.C. § 704. Additionally, because the pension plan assets are not property of the debtor's estate, 11 U.S.C. § 541,[14] as Trustee of that estate, Pritchard asserts that he can have no authority over the plan. A bankruptcy trustee is empowered, in Pritchard's view, only to collect and liquidate the assets of the estate as quickly as is possible. *See e.g., In re Riverside-Linden Investment Co.,* 925 F.2d 320, 322 (9th Cir.1991).

Pritchard finds further fault with the district court's order directing him to terminate the pension plan in that it requires him to take actions on behalf of third parties. Property of the estate does not include "any power that the debtor may exercise solely for the benefit of an entity other than the debtor," 11 U.S.C. § 541(b)(1), and therefore, Pritchard argues that he would violate his fiduciary duties as Trustee if he acted to terminate the plan because the plan is of no value to the estate and termination would solely benefit the plan participants.

Pritchard's arguments, when held up to scrutiny, fail to convince us that the district court acted improperly in compelling the Trustee to take control of and terminate the Esco pension plan. We find that the duties imposed by the Bankruptcy Code include the obligation to perform any termination obligations imposed by ERISA and that by doing so the trustee is indeed acting in the service of

---

[14]The estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).

10

the best interests of the estate. Similarly, such action does not violate the trustee's fiduciary obligation to act only in the interest of consolidating the debtor's assets and liabilities and closing the estate. To the contrary, terminating the pension plan directly promotes these aims.

Article XII of the Esco pension plan provides that the sponsor, Esco, has expressly reserved for itself the right to terminate the plan. Because Esco is the entity empowered to terminate the plan, it was required to do so when the company entered bankruptcy and became unable to continue funding the plan. However, Esco, has now been taken over by the Chapter 7 Trustee.

Section 402(a) of ERISA, 29 U.S.C. § 1102(a)(1), requires that a pension plan specify one or more named fiduciaries who have authority to manage the operation and administration of the plan. If, however, an ERISA administrator is not named under the plan, 29 U.S.C. §§ 1002(16)(A) and 1301(a)(1) provide that the plan sponsor is the administrator by operation of law. Therefore, the fact that the committee designated to administer the Esco plan is not currently functioning or may never have been put in place, as alleged by the PBGC, does not impact the ability of the Trustee to terminate the plan.[15]

Pritchard, as Esco's bankruptcy Trustee, assumes the position

---

[15]Pritchard argues that the bankruptcy court failed to make a factual finding that no plan administrator exists. The existence, *vel non,* of a committee appointed to administer the plan does not, however, impact Esco's responsibility as the plan sponsor for terminating the plan under Article XII since that section specifically vests this power with Esco itself.

11

of the debtor as to that debtor's many obligations. 11 U.S.C. § 541. Previous courts have held that statutory obligations that bind the debtor will subsequently bind the bankruptcy trustee. *Hays and Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 885 F.2d 1149, 1154-62 (3rd Cir.1989). The *Hays* court determined that the bankruptcy trustee must comply with the statutorily imposed obligation to arbitrate under the Federal Arbitration Act, 9 U.S.C. §§ 1-14, because the trustee "stands in the shoes of the debtor for purposes of the arbitration clause and that the trustee-plaintiff is bound by the clause to the same extent as would be the debtor." *Id.* We believe that obligations originating out of ERISA are similarly binding on the bankruptcy Trustee in this case.

Pritchard claims that he cannot be bound by Esco's ERISA responsibilities because it would contravene his fiduciary duties to the estate and that the Bankruptcy Code excludes from the bankruptcy estate powers "that the debtor may exercise solely for the benefit of an entity other than the debtor." 11 U.S.C. § 541(b)(1). He claims that executing the termination of the pension plan benefits the pension plan participants alone. This argument ignores, however, the important ways in which the power to terminate a pension plan benefits the bankruptcy estate.

The debtor is entitled to any surplus funds where, upon the termination of the plan, a plan's assets exceed the liabilities owed to plan participants. 29 U.S.C. § 1344. In the instant case, although no surplus assets exist to revert to the Esco estate, the exercise of the authority to terminate the plan will nevertheless

12

benefit that estate. Indeed, the power to terminate the Esco pension plan benefits the bankruptcy estate in various ways. Underfunded pension plans such as the one at issue here must be terminated in order to cut off further escalation of liabilities in the form of benefit accruals and vesting. In this way, the Trustee can fix the liability of the debtor's estate under Title IV of ERISA requiring employers to compensate the PBGC for any underfunding by ceasing the continued amassing of benefits by participants. 29 U.S.C. § 1362(b)(1)(A). Moreover, the plan sponsor's annual contributions to the plan continue to accrue under 29 U.S.C. § 1082 until the plan is terminated pursuant to Title IV. The bankruptcy estate, therefore, greatly benefits by the trustee's power to terminate the debtor's pension plan, even where the plan does not have a revertible surplus.[16]

The Bankruptcy Code and recent case law have imposed various duties on bankruptcy trustees. These duties provide support for the trustee's execution of the required termination tasks. A trustee has a duty to preserve the estate's assets in order to maintain the most advantageous liquidation of the estate for the

---

[16]We also note that even though the employer (or bankruptcy trustee) makes the decision to terminate the pension plan considering factors beyond the best interests of the plan and its participants does not mean that the decision violates the employer's (or trustee's) fiduciary's responsibility to those participants. The decision to terminate is an executive decision in which the decisionmaker is not functioning as a fiduciary. *Drennan v. General Motors Corp.*, 977 F.2d 246, 251 (6th Cir.1992), *cert. denied*, --- U.S. ----, 113 S.Ct. 2416, 124 L.Ed.2d 639 (1993); *Payonk v. HMW Industries, Inc.*, 883 F.2d 221, 229 (3rd Cir.1989); *Amalgamated Clothing & Textile Workers Union v. Murdock,* 861 F.2d 1406, 1419 (9th Cir.1988).

interest of its creditors. *See In re Rigden,* 795 F.2d 727, 730 (9th Cir.1986) (bankruptcy trustee has "a fiduciary obligation to conserve the assets of the estate and to maximize distribution to creditors"); *In re Melenyzer,* 140 B.R. 143, 154 (Bankr.W.D.Tex.1992) (same). The trustee must also "close such estate as expeditiously as is compatible with the best interests of parties in interest." 11 U.S.C. § 704; *see also Yadkin Valley Bank & Trust Co. v. McGee (In re Hutchinson),* 5 F.3d 750, 753 (4th Cir.1993) ("the duty to close the estate expeditiously is the trustee's "main duty' and "overriding responsibility.' ") (citations removed).

As set out above, the estate continues to accrue liabilities until the plan is terminated. The Esco Trustee is therefore acting within the authority provided by his duty to preserve the assets of the estate by terminating the pension plan and halting the continued accrual of benefits. Furthermore, terminating the pension plan obligations of the debtor fulfills the Trustee's duty to expeditiously close the estate. In sum, the duties set out under 11 U.S.C. § 704 provide ample support for the imposition on the Trustee of an obligation to terminate the pension plan.

In carrying out the duties of collecting and liquidating the assets of the estate and closing that estate as expeditiously as is appropriate, courts have required bankruptcy trustees to perform a variety of administrative and statutory tasks. Of note is *Midlantic National Bank v. New Jersey Dep't of Envtl. Protection,* 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986), in which a

14

Chapter 7 trustee was compelled to conform with various health and safety regulations in administering estate property. The Court held that the trustee must comply with environmental regulations in exercising its power to abandon property with serious environmental problems. *Id.* at 506, 106 S.Ct. at 762; *see also In re Commonwealth Oil Refining Co., Inc.,* 805 F.2d 1175, 1185 (5th Cir.1986), *cert. denied,* 483 U.S. 1005, 107 S.Ct. 3228, 97 L.Ed.2d 734 (1987). Similarly, a Chapter 7 trustee is obligated to file tax returns in the course of administering the bankruptcy estate. *Holywell Corp. v. Smith (In re Holywell Corp.),* --- U.S. ----, ----, 112 S.Ct. 1021, 1027, 117 L.Ed.2d 196 (1992); *Tambay Trustee v. Pizza Pronto, (In re Pizza Pronto),* 970 F.2d 783, 784 (11th Cir.1992); *United States v. State Farm Fire & Casualty Co. (In re Joplin),* 882 F.2d 1507, 1511 (10th Cir.1989). The bankruptcy trustee is also required to abide by any statutorily imposed obligations to arbitrate disputes. *Hays and Co. v. Merrill Lynch,* 885 F.2d at 1153-54.[17] In light of the various administrative and statutory obligations imposed upon the bankruptcy trustee in performing his liquidation responsibilities, we find no obstacle in compelling Pritchard to comply with ERISA.

Pritchard's refusal to terminate the pension plan leaves a gaping hole in the statutory protections offered pension plan participants and beneficiaries. Someone must shoulder the

---

[17]A Chapter 7 trustee has also been held liable for his failure to have snow cleared from the roof of bankrupt estate's property. *In re Reich,* 54 B.R. 995, 1003 (Bankr.E.D.Mich.1985). We assume the PBGC's claims outweigh the importance of a few snowflakes.

responsibility for terminating the pension plan of an employer that has entered Chapter 7 liquidation proceedings. The bankruptcy trustee cannot be allowed to shirk his duties in this regard for if he is permitted to do so, the consequences for the plan participants could be severe. For example, in the instant case no one even bothered to notify the PBGC of the fact that the employer had stopped funding the pension plan and the participants could easily have been left entirely without insurance coverage.

If no one can be given the baton for executing an order of termination, the PBGC's functions would be downsized and the many participants who rely on the insurance will be left stranded without their benefits. We must send the message to both employers and pension plan participants that bankruptcy will not serve as an instrument for abandoning a corporation's pension obligations. By abandoning the debtor's pension plan obligations, the Trustee has attempted to create a separate avenue for terminating a corporation's ERISA responsibilities without complying with the specific requirements of that statute. This contravenes Congress' clearly expressed intention of preserving an employer's ERISA termination obligations even after that employer enters bankruptcy.

The bankruptcy trustee empowered to liquidate the estate cannot claim that the Bankruptcy Code denudes the estate of the many vestments of personhood which the corporation maintained in its former solvent status. Of great importance among the statutory obligations is an employer's (or its estate's) responsibility to its former employees. By imposing the obligation to terminate a

16

pension plan on the bankruptcy Trustee, we can insure that plan assets are protected during volatile periods of business failure and liquidation.  We believe that recognizing this obligation will give full effect to ERISA while leaving intact the integrity of the Bankruptcy Code.

IV.

We conclude that the district court properly determined that the bankruptcy trustee cannot avoid its obligations to the debtor's pension plan by abandoning that plan.  The administrative procedures for proper termination of a pension plan must be complied with, whether by the plan sponsor, or upon his accession to control of the corporation, the bankruptcy trustee.

For the foregoing reasons, the order of the district court is AFFIRMED.

EMILIO M. GARZA, Circuit Judge, dissenting:

Although I agree "that bankruptcy [should] not serve as an instrument for abandoning a corporation's pension obligations," I disagree that we should "[impose] the obligation to terminate a pension plan on the bankruptcy trustee."  Neither ERISA nor the Bankruptcy Code explicitly contemplates the transfer of such ERISA obligations to the bankruptcy trustee, *see* 29 U.S.C. § 1341 and 11 U.S.C. § 704, and I question whether this Court has the authority to judicially legislate such a solution.  Notwithstanding that I agree that the termination requirements under ERISA do not dissolve upon bankruptcy, neither statutory authority nor case law shifts that responsibility from the debtor to the bankruptcy trustee.

17

Moreover, the authority cited by the majority to support imposing this obligation on the bankruptcy trustee does not fit the circumstances of this case. Finally, ERISA itself offers an alternative mechanism by which the PBGC itself can terminate a pension plan. For these reasons, I respectfully dissent.

A bankruptcy trustee can exercise only those powers granted by the Bankruptcy Code. *See In re Benny,* 29 B.R. 754, 760 (N.D.Cal.1983) ("The trustee is a creature of statute and has only those powers conferred thereby."). Under the Code, a Chapter 7 trustee's powers extend only over property of the estate. *See In re Ozark Restaurant Equip. Co.,* 816 F.2d 1222, 1228-29 (8th Cir.) ("[T]here is nothing in ... the liquidation framework of the Code authorizing a Chapter 7 trustee to collect money not owing to the estate."), *cert. denied,* 484 U.S. 848, 108 S.Ct. 147, 98 L.Ed.2d 102 (1987). Here, the trustee does not assert that the employer should be able to "desert" its obligations under the plan. Rather, he argues that this obligation still belongs to the employer, and the trustee has no power to assume it. I agree. Although ERISA imposes the obligation to terminate on the employer,[1] bankruptcy law controls whether that obligation becomes part of the estate and part of the trustee's duties. When a debtor files bankruptcy, an

---

[1] Although ERISA's references to the *employer'* s duties are numerous, nowhere does ERISA refer to the bankruptcy trustee or any relationship the trustee may have to a debtor's plan. Accordingly, I do not find the majority's conclusion as to Congress' intent "obvious." *See* slip op. at 6639 & n. 13.

18

estate is created.[2]  The bankruptcy estate is distinct from the debtor.  *See In re Doemling,* 127 B.R. 954, 955 (W.D.Pa.1991) ("The most glaring problem in the ... analysis is its failure to recognize the distinction between the debtors and the estate.... The debtors and the estate are not interchangeable.").[3] Consequently, the Code does not impose all the debtor's obligations on the trustee.  Indeed, it clearly excludes certain obligations from the estate and hence from the trustee's powers.[4]  Unless the obligation to terminate a pension plan is covered by section 541, it is not part of the estate.

The majority gives examples of instances in which a bankruptcy trustee has administered a debtor's pension plan, but all of these cases are under chapter 11, under which the trustee has the power to operate the debtor's business, a power and duty not within the scope of a chapter 7 trustee, unless specifically authorized.  The duties of a chapter 7 and chapter 11 trustee differ.  11 U.S.C. §§

---

[2]Section 541 defines the scope and contents of that estate. "The commencement of a [bankruptcy] case ... creates an estate. Such estate is comprised of all the following property ...:  (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property...." 11 U.S.C. § 541 (1988).

[3]*See also In re Nevin,* 135 B.R. 652 (Bankr.D.Hawaii 1991) (limiting trustee's obligation to file tax returns only for the estate, not for the debtors).  For example, the majority confuses the concept of the bankruptcy estate with that of the debtor by stating that the estate has "former employees."  *See* slip op. at 6638 ("the estate's responsibility to its former employees").  A bankruptcy estate has no former employees;  only the debtor does.

[4]"Property of the estate does not include—(1) any power that the debtor may exercise solely for the benefit of an entity other than the debtor."  11 U.S.C. § 541(b) (1988).

19

704, 1106 (1988).[5]  The goal of chapter 7 is liquidation, and that of chapter 11 is reorganization and continuation of the debtor's business.  Chapter 11 duties are not applicable to a chapter 7 trustee;  consequently, the majority's cases are inapplicable to this situation.  Pritchard has not been authorized to operate Esco; accordingly, his duties are limited to those enumerated under section 704 regarding property of the chapter 7 estate.[6]

The ERISA Plan is not property of the estate.  *See Patterson v. Shumate,* --- U.S. ----, ----, 112 S.Ct. 2242, 2250, 119 L.Ed.2d 519 (1992) (excluding from the bankruptcy estate a debtor's interest in an ERISA plan).  Moreover, the district court held that the Plan itself, not merely its assets, was not property of the estate.  This arguably includes the right to terminate the Plan.  Assuming that the district court's order only covered the Plan assets, this still leaves the question of whether the power to terminate, standing alone, is property of the estate.[7]  The parties

---

[5]ERISA itself recognizes differences between chapter 7 and chapter 11 regarding necessary distress criteria.  Section 1341(c)(2)(B)(ii) contemplates and requires further involvement of the debtor and bankruptcy court in the termination proceeding after the bankruptcy filing.  Section 1341(c)(2)(B)(i) only requires filing of or conversion to chapter 7.  *See* 29 U.S. § 1341(c)(2)(B) (1988 & Supp. V 1993);  29 C.F.R. § 2616.3 (1993).

[6]The majority attempts to find authority in § 704 for imposing on the bankruptcy trustee the duty to terminate the plan.  *See* slip op. at 6641-42 ("[T]he duties set out under 11 U.S.C. § 704 provide ample support....").  If a duty does not pertain to property of the estate, however, it cannot fit within § 704.  Consequently, the majority's dependence on § 704 fails.

[7]The majority does not specifically hold that the obligation to terminate is property of the estate.  Nonetheless, it states that the bankruptcy trustee is attempting to "abandon" its obligations.  *See* slip op. at 6638-39 ("cannot allow the

20

have not cited, nor have I found, any case law characterizing a bare obligation as property. The administrative obligations cited by the majority all refer to obligations attached to property of the estate.[8] Neither have the parties cited, nor have I found, any case law imposing an administrative obligation for non-estate property on a bankruptcy trustee. The *Hays* case cited by the majority imposed the obligation to arbitrate on the trustee only for claims "derived from the rights of the debtor under section 541." *See Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 885 F.2d 1149, 1154 (3d Cir.1989). Because the plan is not property of the estate, an obligation such as termination is not derived under section 541. Indeed, *Hays* refused to impose the obligation to arbitrate on claims that were "not derivative of the bankrupt." 885 F.2d at 1155.

The majority also holds that the power to terminate would not be excluded by section 541(b)(1) as an interest exercised "solely

bankruptcy abandonment procedures to be used"), 6642 ("abandoning the debtor's pension plan obligations"), 6643 ("abandoning that plan"). Unless an item is property of the estate, however, there is nothing for the trustee to abandon. *See* 11 U.S.C. § 554 (1988) ("A trustee may abandon *property of the estate.*").

[8]*See Midlantic Nat'l Bank v. New Jersey Dep't of Envt'l Protection,* 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986) (environmental obligations for contaminated property of the estate); *In re Commonwealth Oil Refining Co.,* 805 F.2d 1175 (5th Cir.1986) (same), *cert. denied,* 483 U.S. 1005, 107 S.Ct. 3228, 97 L.Ed.2d 734 (1987); *In re Holywell Corp.,* --- U.S. ----, 112 S.Ct. 1021, 117 L.Ed.2d 196 (196) (1992) (tax returns for property of the estate); *Tambay Trustee v. Pizza Pronto (In re Pizza Pronto),* 970 F.2d 783 (11th Cir.1992) (same); *United States v. State Farm Fire & Cas. Co. (In re Joplin),* 882 F.2d 1507 (10th Cir.1989) (same); *In re Reich,* 54 B.R. 995 (Bankr.E.D.Mich.1985) (the snowflakes collapsed the roof of the estate's property, not the building next door).

for the benefit of an entity other than the debtor," because it would benefit the estate. *See* slip op. at 6639-41. Again, I disagree. Assets which have no value to the estate are not property of the estate and the trustee has no power or duty to manage them. *See In re Peckinpaugh,* 50 B.R. 865, 869 (Bankr.N.D.Ohio 1985) (holding that it is against the intent of the Bankruptcy Code to shift the trustee from a custodial role to that of an investment manager and that "at no time does [the trustee] have a duty to manage assets, which have no value to the estate ..."); *see also In re Kreiss,* 72 B.R. 933, 939 (Bankr.E.D.N.Y.1987) (excluding from the bankruptcy estate an interest that had no value). The power to terminate the plan does not benefit the estate. The plan is underfunded, and Esco will not be able to pay off the plan, even at current value. Exercising a power to terminate will not add any value to the estate; it will merely cut off the escalation of the amounts the PBGC must supply to pay off the plan. It is the PBGC, not the estate, to whom the right to terminate the plan has value. *See Pension Benefit Guarantee Corporation v. FEL Corp.,* 798 F.Supp. 239, 242 (D.N.J.1992) (stating that PBGC claims for termination liability are unsecured claims, unlikely to be paid by an insolvent debtor in bankruptcy, thereby increasing PBGC's risk).[9]

---

[9]Moreover, imposing the obligation to administer the plan during the termination process on the chapter 7 trustee does require the trustee to act only for the benefit of the plan. *See N.L.R.B. v. Amax Coal Co.,* 453 U.S. 322, 329, 101 S.Ct. 2789, 2794, 69 L.Ed.2d 672 (1981) ("[A] trustee bears an unwavering duty of complete loyalty to the beneficiary of the trust, to the exclusion of all other parties"), 2796 n. 17 ("[T]he trustees

22

The majority states that "someone must shoulder the responsibility for terminating the pension plan of an employer that has entered Chapter 7 liquidation proceedings."  I agree, but I do not see any basis for the bankruptcy trustee to be that "someone."  Moreover, ERISA provides in § 1342 for the PBGC to fulfill that role.[10]

Judicial transference of the employer's obligation to terminate the plan in order to ensure "that plan assets are protected" is a laudable goal, but ERISA already protects the plan assets through the PBGC.  Imposing this obligation on the bankruptcy trustee contravenes the limited authority allowed under the Bankruptcy Code and forces the trustee into a conflict of

---

must act solely in the interest of the trust beneficiaries").
Additionally, although the majority correctly states that the
"decision to terminate" is not subject to fiduciary restrictions,
*see* slip op. at 6641 n. 16, the plan administrator does have
fiduciary responsibilities during the process of termination.
See 29 U.S.C. § 1342(d)(3) (1988 & Supp. V 1993) (stating that an
ERISA plan trustee shall be a fiduciary during the process of
terminating a pension plan).

[10]ERISA grants authority to the PBGC to terminate the Plan.
First, it authorizes PBGC to institute termination proceedings.
*See* 29 U.S.C. § 1342(a) (1988 & Supp. V 1993).  Second, it
authorizes PBGC to apply to the United States District Court for
the appointment of a trustee to administer the plan, or PBGC may
request appointment itself as trustee.  *See* 29 U.S.C. § 1342(b)
(1988 & Supp. V 1993).  Third, it authorizes PBGC to ask the
district court to decree that the plan trustee shall terminate
the plan.  *See* 29 U.S.C. § 1342(c) (1988 & Supp. V 1993); *see
also Pension Benefit Guarantee Corporation v. FEL Corp.,* 798
F.Supp. at 242 (explaining PBGC's authority to terminate a plan
under § 1342).  The majority assumes that terminating the Plan is
a "relatively simple task."  *See* slip op. at 6638 ("the
relatively simple task of terminating Esco's pension plan").  If
so, I question why the PBGC has refused to pursue this obvious
solution and its own self-interest.

interest that frustrates obligations to the bankruptcy estate.[11]

Because ERISA already provides an alternative solution that avoids

this conflict, I respectfully dissent.

---

[11]*See In re Deena Woolen Mills,* 114 F.Supp. 260, 267 (D.Me.1953) ("[A] trustee should be wholly free from all entangling alliances or associations that might in any way control his complete independence and responsibility.");  *In re 10th Avenue Distributors, Inc.,* 97 B.R. 163, 166 (Bankr.S.D.N.Y.1989) (limiting trustee's standing to recovery of property to benefit entire estate and "not particular to one creditor").