**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 00-10670

In the Matter of: KENDAVIS HOLDING COMPANY; KENDAVIS INDUSTRIES
INTERNATIONAL, INC., Debtors.

JAMES A. CHRISTOPHER,

Appellee,

VERSUS

KENDAVIS HOLDING COMPANY,

Appellant.

Appeal from the United States District Court
for the Northern District of Texas

April 23, 2001

Before STEWART, PARKER, Circuit Judges, and GOLDBERG, Judge.[*]

ROBERT M. PARKER, Circuit Judge:

Kendavis Holding Company ("Kendavis") appeals from the
district court's order reversing the bankruptcy court's final
judgment.  Kendavis claims that Appellee James Christopher's

---

[*]Judge of the United States Court of International Trade, sitting
by designation.

1

knowledge of its previous bankruptcy proceedings was sufficient notice to satisfy due process requirements and justify the discharge of Christopher's claim against the company for loss of pension benefits.

## I.

James Christopher worked for Unit Rig & Equipment Company from 1954 until 1977, except for a three-year period in which he worked for Unit Rig & Equipment Company Canada. Both companies are subsidiaries of Kendavis Holding Company, and each had a separate pension plan. Qualified employees working for the United States subsidiary participated in the American pension plan, and employees working for Unit Rig Canada were eligible for benefits from the Canadian pension plan.

In February of 1985, creditors brought an involuntary bankruptcy proceeding against Kendavis under Chapter 11. Kendavis excluded the pension beneficiaries from its bankruptcy schedules and decided not to inform the beneficiaries of the proceedings. During the course of negotiating a plan for reorganization, Kendavis agreed to take twenty million dollars out of a surplus in the American pension plan for the benefit of its creditors. Kendavis sent Christopher a letter dated October 18, 1985 stating its intention to terminate the pension plan and assuring Christopher that his benefits under the plan would not be affected. Christopher later acknowledged that he knew about the bankruptcy through local newspaper articles.

On November 24, 1986, the bankruptcy court approved the reorganization plan and discharged any remaining claims. The court also issued an injunction against any additional claims arising before the effective date of the plan.

Christopher elected benefits under the American pension plan in 1989. He attempted to collect pension benefits under the Canadian plan in 1995, but learned that Kendavis terminated the plan years before. On October 3, 1996, Christopher filed suit against Kendavis in federal district court in Oklahoma. He claimed that he received less than his full benefits under the American pension plan and that Kendavis wrongfully rejected the benefits to which he was entitled under the Canadian pension plan. Kendavis argued that Christopher's claim arose before the effective date of its Chapter 11 reorganization and moved to reopen the bankruptcy proceedings.

The bankruptcy court reopened the case on April 30, 1997. The court held that Christopher's claim was discharged by its 1986 Order of Confirmation and assessed $40,000 in sanctions against Christopher for violating its injunction. Christopher appealed to the district court. The district court reversed, concluding that discharge of Christopher's claim for pension benefits violated his right to adequate notice as required by constitutional due process even though he knew of Kendavis's bankruptcy proceedings. *See Christopher v. Kendavis Holding Co. (In re Kendavis Holding Co.),*

2000 WL 769226 (N.D. Tex. June 14, 2000).

## II.

We review the bankruptcy court's findings of fact under the clearly erroneous standard and decide issues of law *de novo*. *See Henderson v. Belknap (In re Henderson)*, 18 F.3d 1305, 1307 (5th Cir. 1994). We review the bankruptcy court's imposition of sanctions for abuse of discretion. *See Perkins Coie v. Sadkin (In re Sadkin)*, 36 F.3d 473, 475 (5th Cir. 1994).

The paramount issue on appeal is whether Christopher's knowledge of the bankruptcy proceeding satisfied due process requirements and justified the discharge of his claim for pension benefits under 11 U.S.C. § 1141(d).[1] Section 1141 provides for the discharge of any claim arising before the date of a plan's confirmation unless the claim is excepted from discharge under

---

[1]This case raises other questions concerning potential pension claims against a bankruptcy estate that were not submitted as issues on appeal. This opinion should not be construed as resolving any issues other than the issues raised herein. *See, e.g., Patterson v. Shumate*, 504 U.S. 753 (1992) (holding that an anti-alienation clause in an ERISA-qualified pension plan excludes the plan from a beneficiary's bankruptcy estate); *Pension Benefit Guarantee Corp. v. Pritchard (In re Esco Mfg. Co.)*, 33 F.3d 509 (5th Cir. 1994), *withdrawn on reh'g*, 50 F.3d 315 (5th Cir. 1995) (requiring the bankruptcy trustee to assume the obligations of terminating a pension plan under ERISA); *Pension Benefit Guarantee Corp. v. Pritchard (In re Esco Mfg. Co.)*, 50 F.3d 315 (5th Cir. 1995) (holding that the bankruptcy trustee had no power to terminate the pension plan as successor to the rights of the plan sponsor and thus was not responsible for claims against the estate regarding the plan's termination because the plan administrator, not the plan sponsor, was responsible for terminating the plan under ERISA).

4

section 523.  Section 523(a)(3)(A) precludes discharge of claims that a debtor neglected to list or schedule.  However, even when the debtor fails to list a claim, the claim may nonetheless be discharged if the "creditor had notice or actual knowledge of the case in time for . . . timely filing."  11 U.S.C. § 523 (a)(3)(A).

While Christopher's knowledge of Kendavis's bankruptcy would presumably require discharge of his claim under the Bankruptcy Code, Christopher raises a question of due process that must be resolved on constitutional grounds.  *See Sequa Corp. v. Christopher (In re Sequa Corp.)*, 28 F.3d 512, 516 (5th Cir. 1994); *Grossie v. Sam (In re Sam)*, 894 F.3d 778, 781 (1990).  *See generally* 8 COLLIER ON BANKRUPTCY ¶ 1141.06 (Lawrence P. King ed., 15th ed. 2000).  Kendavis argues that this Court set forth a bright-line rule in *In re Sam* and *In re Sequa Corp.*  Kendavis contends that actual knowledge of the pendency of a bankruptcy case will always satisfy standards of constitutional due process as long as the creditor has an opportunity to timely file his claim.  Because Christopher knew about the bankruptcy proceedings in time to meet the filing deadlines, Kendavis contends that we are bound by precedent to conclude that Christopher's claim was discharged without further analysis of the factual circumstances.

Protection of an individual's due process right to adequate notice requires more than the cursory review that Kendavis suggests.  In *Mullane v. Central Hanover Bank & Trust Co.*, the

5

Supreme Court articulated the standard for adequate notice:

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. The notice must be of such nature as reasonably to convey the required information, . . . and it must afford a reasonable time for those interested to make their appearance. But if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met the constitutional requirements are satisfied.

339 U.S. 306, 314-15 (1950) (citations omitted). Under the Supreme Court's standard, we must analyze the particular facts of each case and determine whether the method used to notify an individual was reasonably certain to inform the individual of a proceeding that could affect his rights. *See id*. at 315.

A potential litigant who knows about a legal proceeding usually has adequate notice that his rights could be jeopardized and should take steps to protect his rights. Nevertheless, an ordinarily valid form of notice may "fail to satisfy due process because of the circumstances of the defendant." *Boddie v. Connecticut*, 401 U.S. 371, 380 (1971). We therefore assess the

6

sufficiency of notice against the backdrop of the factual circumstances in each case.  *See Mullane*, 339 U.S. at 314. Kendavis's suggestion that an individual's knowledge of a bankruptcy proceeding always qualifies as adequate notice obviates the Supreme Court's analysis in *Mullane* and misinterprets this Court's holdings in *In re Sam* and *In re Sequa Corp.*

In *In re Sam*, 894 F.2d 778, 779 (5th Cir. 1990), the claimant filed a section 1983 suit against the debtor during the debtor's bankruptcy proceedings.  Although the debtor did not list the claimant as a creditor, the debtor sent the claimant's attorney a Notice of Automatic Stay.  *See id.* at 779.  The notice did not disclose the bar date for filing remaining claims against the estate.  *See id.*  The claimant's attorney first became aware of the bar date after it passed.  *See id.*  On appeal, we concluded that the claimant, through his attorney, received adequate notice that "his section 1983 claim against [the debtor] was affected by [the debtor's] bankruptcy . . .," and that the claimant had sufficient time to inquire as to the bar date.  *Id.* at 781.  *In re Sam* does not support the proposition that discovery of a bankruptcy case is adequate notice in all circumstances.

In *In re Sequa Corp.*, 28 F.3d 512, 513-14 (5th Cir. 1994), the debtor filed for bankruptcy under Chapter 11.  He and other investors sought to purchase insurance companies from Sequa Corporation ("Sequa") during the pendency of his bankruptcy case.

7

*See id.* at 513. Sequa filed suit against the debtor in New York for claims arising from the transaction. *See id*. at 514. During the New York litigation, the bankruptcy court confirmed the debtor's Chapter 11 plan. *See id.* The debtor then filed an adversary proceeding in the bankruptcy court seeking discharge of Sequa's claims. *See id.* The court held that the postpetition claims were discharged by the confirmation order. *See Christopher v. American Universal Ins. Group, Inc. (In re Christopher)*, 148 B.R. 832 (Bankr. N.D. Tex. 1992).

On appeal, *Sequa* argued that postpetition creditors were entitled to formal notice of important dates and filing deadlines under the Due Process Clause. *See id.* at 515. We concluded that formal notice is not required for postpetition claims. *See id.* at 518-19. We further determined that the evidence of Sequa's actual knowledge satisfied both prongs of the *In re Sam* analysis-(1) the notice apprised the claimant of the pendency of an action affecting his rights, and (2) the notice allowed sufficient time to permit the claimant to present his objections. *See In re Sam*, 894 F.3d at 782. In reaching this conclusion, we reviewed the evidence that showed the extent of Sequa's knowledge regarding the bankruptcy case. *See In re Sequa Corp.*, 894 F.2d at 518. The evidence clearly established that Sequa possessed sufficient knowledge to impose a duty on the company to protect its rights in the bankruptcy court. *See id.* at 519. We limited our holding to

"postpetition plaintiffs in [Sequa's] position." *See id.* at 519.

In re Sequa Corp. does not espouse a rule that would preclude further consideration of the context in which a creditor learns of a bankruptcy proceeding. As established by the Court in *Mullane*, adequate notice is notice reasonably calculated, given the factual circumstances, to inform claimants of a proceeding that affects their rights. *See Mullane*, 339 U.S. at 314-15. *See also In re Sadkin*, 36 F.3d at 475-76 (holding that a claimant's actual knowledge constituted adequate notice of the debtor's amended list of exemptions based on the circumstances of the case); *Otto v. Texas Tamale Co., Inc. (In re Texas Tamale Co., Inc.)*, 219 B.R. 732 (Bankr. S.D. Tex. 1998) (analyzing the factual context to determine whether the creditor's knowledge of the proceedings was adequate notice). We therefore apply the fact-intensive analysis required by *Mullane* to determine whether Christopher's knowledge of the bankruptcy case was sufficient to charge him with the burden of asserting his claim. *See Mullane*, 339 U.S. at 314.

During the pendency of the bankruptcy proceedings, Kendavis decided to terminate its American pension plan to satisfy certain debts. Kendavis sent a letter to Christopher assuring him that the termination of the Kendavis pension plan would have no affect on his vested pension benefits. The letter did not mention the bankruptcy proceeding, but Christopher learned about the case through local newspaper articles.

9

Despite Christopher's actual knowledge of Kendavis's bankruptcy proceeding, an unrepresented person in his position should not be expected to file a claim in the bankruptcy court to protect his rights. An employer owes a fiduciary duty to the beneficiaries of a pension plan when an employer seeks to recoup surplus funds by terminating the plan. *See Bussain v. RJR Nabisco, Inc.*, 223 F.3d 286, 295-96 (5th Cir. 2000) (citing 29 U.S.C. § 1104(a)). Christopher therefore acted reasonably by relying on Kendavis's assurance that his pension benefits were not in jeopardy. The fact that the letter does not specifically refer to the bankruptcy proceeding does not diminish the effect of the message. Any concern that the bankruptcy case may have affected Christopher's right to pension benefits was reasonably dissipated by Kendavis's letter.

Due process requires, at the very least, a debtor to refrain from assuring potential claimants that their rights will not be adversely affected during bankruptcy proceedings. This is especially true when the debtor is a large corporation who owes a fiduciary duty to the individual claimant. Although Kendavis may not have harbored any deceptive intent by assuring Christopher that his rights would not be affected, "fundamental notions of fairness and due process" dictate that we not place the burden on Christopher to come forward with his claim. *United States v. Henderson*, 707 F.2d 853 (5th Cir. 1983) (holding that the

10

requirements of due process were not satisfied by notices of foreclosure that misrepresented Mississippi law). Before he was deprived of his claim for pension benefits, Christopher was entitled to notice that would reasonably apprise him "of the pendency of the action and afford [him] the opportunity to present [his] objections." *Mullane*, 339 U.S. at 314. In these limited circumstances, perfunctory knowledge of the bankruptcy proceeding did not constitute adequate notice to satisfy constitutional due process requirements.

Accordingly, we hold that the bankruptcy court's confirmation order did not discharge Christopher's claim. Because his claim for pension benefits was not discharged, Christopher did not violate the bankruptcy court's injunction. The bankruptcy court's imposition of sanctions was therefore an abuse of the court's discretion. The district court's order is affirmed.

AFFIRMED