[No. 51051-7-I. Division One. September 22, 2003.]

DANNY L. KIRKPATRICK, ET AL., *Appellants*, v. ARTHUR CHEFF, ET AL., *Respondents*.

*Robert E. Ordal*; and *Howard M. Goodfriend* and *Evy F. McElmeel* (of *Edwards, Sieh, Smith & Goodfriend, P.S.*), for appellants.

*Dan S. Lossing*, for respondents.

AGID, J. — Danny L. (Dan) and Margaret A. Kirkpatrick filed an unlawful detainer action in Snohomish County Superior Court to evict Arthur (Art) and Joyce Cheff from property the Kirkpatricks own in Maltby. The Cheffs countersued for specific performance, seeking to enforce a purchase and sale agreement they entered into with the Kirkpatricks to purchase the property after the Kirkpatricks had filed a bankruptcy petition. The trial court consolidated the cases, found in favor of the Cheffs, granted specific performance, and awarded attorney fees. The Kirkpatricks assert that their confirmed Chapter 11 reorganization plan barred the Cheffs' postpetition claim to the property because the Cheffs had actual notice of the proceedings but failed to protect their rights in bankruptcy court. We agree, concluding that formal notice is not required for postpetition claims and the actual notice in this case satisfied due process. We reverse the trial court's decision and remand for proceedings on the Cheffs' quantum meruit claim for payments and improvements they made on the property. We also award the Kirkpatricks attorney fees on appeal.

## FACTS

Dan and Margaret Kirkpatrick purchased the Maltby property in 1986 on a contract that had a balloon payment due in 10 years. During the 1990s, they experienced financial difficulties. They filed for Chapter 13 bankruptcy protection in March 1995 and converted the proceedings to Chapter 11 in October of that year. When the balloon payment for the property came due in 1996, the Kirkpatricks could not pay the amount due to lender Pacific West. To prevent forfeiture, Dan's brother, Mike Kirkpatrick, paid the amount due and took assignment of the seller's interest in the Pacific West real estate contract. While the Kirkpatricks were negotiating with a commercial lender to repay Mike and still under bankruptcy court supervision, Art Cheff approached Dan about buying the property. Art knew about the bankruptcy proceedings, and he and Dan agreed on a $300,000 sale price.

The Cheffs' attorney prepared the purchase and sale agreement, which provided that the Cheffs would purchase Mike Kirkpatrick's interest in the property and pay the remaining $180,000 to the Kirkpatricks at closing. The agreement was expressly conditioned upon the "[s]eller [the Kirkpatricks] obtaining an order from the bankruptcy court authorizing the transfer of the . . . property to [the Cheffs] free and clear of all liens and encumbrances prior to closing." The parties signed the purchase and sale agreement on April 23, 1997. On May 1, the Cheffs took possession of the Maltby property and transferred their concrete pumping business there.

On June 20, 1997, the Kirkpatricks filed a debtor disclosure statement and a plan of reorganization (plan) with the bankruptcy court. The plan listed Art Cheff as the only fully secured class three creditor holding the seller's interest in the Maltby property, which he had acquired from Dan's brother. The plan stated:

> Class Three claimant will be paid in full through monthly payments of $1,053 or sale of property. These payments shall

be over and above the monthly plan payment of $1,000. A sale could occur at anytime but need not occur at all if debtors make monthly payments of $1,053.

It did not reference the purchase and sale agreement. On June 24, the Kirkpatricks filed a notice of hearing with the court, and the court confirmed the reorganization plan on September 8, 1997. The Cheffs did not get formal notice of the plan, the hearing, or the confirmation. In December 1997, the Cheffs' attorney obtained a copy of the reorganization plan. Although the Cheffs filed a notice of appearance in the Kirkpatricks' bankruptcy proceeding, they did not seek to modify the plan to include their claim under the purchase and sale agreement.

In December 2001, the Cheffs asserted their rights as assignees of the seller's interest and demanded $45,000 from the Kirkpatricks, the amount of the accrued delinquency on the monthly payments of $1,053 under the Kirkpatricks' reorganization plan. The Kirkpatricks tendered a check, but the Cheffs refused the tender. In January 2001, the Kirkpatricks entered into a lease option/purchase agreement for the Maltby property with John Dickinson for a purchase price of $600,000. At the same time they filed this unlawful detainer action to evict the Cheffs from the property, and the Cheffs countersued for specific performance of the purchase and sale agreement. As noted above, the trial court found in favor of the Cheffs, granting an award of specific performance and attorney fees. The Kirkpatricks appeal.

## ANALYSIS

I. Effect of Confirmed Chapter 11 Plan on the Cheffs' Postpetition Claim.

■ ■ Chapter 11 discharge applies to any debt that arose before the confirmation date.[1] "[N]othing in the Bankruptcy Code or Bankruptcy Rules requires a Chapter

---

[1] 11 U.S.C. § 1141(d).

11 petitioner to serve notice of the Chapter 11 proceedings on parties with whom the petitioner deals postpetition."[2] Formal notice is not required for postpetition claims,[3] but due process requires that notice be sufficient " 'to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' "[4] To determine whether it is sufficient, we look at the notice in the context of the facts of each case. Evidence of actual knowledge may constitute sufficient notice to trigger a postpetition creditor's duty to protect its rights in bankruptcy court.[5]

The Kirkpatricks contend the trial court erred by concluding it had the authority to enforce the purchase and sale agreement. The major premise for this ruling was the court's decision that a postpetition claim is discharged only if the postpetition claimant receives formal notice of the confirmation plan. But, as we stated, formal notice is not required for postpetition claims. Postpetition creditors, like the Cheffs, are in a better position to preserve their claims in Chapter 11 proceedings than a prepetition creditor who has no knowledge or expectation that the debtor will seek bankruptcy protection.[6] That does not end the inquiry because we must also be satisfied that postpetition creditors had notice that satisfies due process.[7] So the relevant question is whether the Cheffs' actual notice of the proceedings satisfies due process. As stated in *Mullane v. Central Hanover Bank & Trust Co.*, constitutional due process requires that the Cheffs have notice that, under all the

---

[2] *In re Christopher*, 28 F.3d 512, 515 (5th Cir. 1994).

[3] *Id.* at 518-19.

[4] *In re Kendavis Holding Co.*, 249 F.3d 383, 386 (5th Cir. 2001) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S. Ct. 652, 94 L. Ed. 865 (1950)).

[5] *Id.* at 387.

[6] *Christopher*, 28 F.3d at 519.

[7] *Kendavis*, 249 F.3d at 387 (concluding that although formal requirements of notice are not required for postpetition claims, constitutionally adequate notice is still required).

circumstances, apprises them of the pendency of the action and affords them an opportunity to present their objections.[8]

*In re Christopher* is instructive.[9] After Christopher filed for Chapter 11 bankruptcy, he contracted to buy insurance companies as part of an investment group. During the negotiations, the seller was "made aware" that Christopher had earlier petitioned for bankruptcy relief under Chapter 11.[10] The insurance company purchase, which violated a state insurance commissioner's order authorizing acquisition, quickly spawned litigation against Christopher. In the meantime, the bankruptcy court confirmed Christopher's plan for reorganization, which did not list the insurance company seller's claim. The Fifth Circuit concluded that the seller's actual knowledge of the proceedings was enough notice to satisfy the test in *Mullane* because the seller could have come forward to protect his rights but failed to do so.[11] In this case, although the trial court found the Kirkpatricks did not provide the Cheffs formal notice of the reorganization plan, the hearing, or the confirmation, it also found the Cheffs had actual knowledge that the Kirkpatricks filed for Chapter 11 bankruptcy before they offered to purchase the property, and that the purchase and sale agreement specifically referenced the bankruptcy proceeding. The Cheffs' actual knowledge of the bankruptcy proceedings afforded them the opportunity to present objections to the plan. That notice comports with due process and triggers the Cheffs' duty to protect their claim based on the agreement in the

---

[8] 339 U.S. 306, 314, 70 S. Ct. 652, 94 L. Ed 865 (1950).

[9] 28 F.3d 512 (5th Cir. 1994).

[10] *Id.* at 513-14.

[11] *Id.* at 519; *see also In re Sam*, 894 F.2d 778 (5th Cir. 1990) (notice was sufficient to satisfy due process when a claimant who filed a 42 U.S.C. § 1983 lawsuit against a police officer after he filed for Chapter 11 bankruptcy received notice of the filing 18 days before the deadline to file his claim); *In re Alton*, 837 F.2d 457 (11th Cir. 1988) (although Byrd was never listed as a prepetition creditor and his late notice of the proceeding did not indicate the date of the filing or the creditor's meeting, the written notice he received was enough to apprise him of the action and afford him the opportunity to present his objections).

bankruptcy proceedings.[12] Because Chapter 11 bankruptcy discharges any liability on a claim, which includes a "right to an equitable remedy for breach of performance . . . whether or not such right . . . is . . . matured, unmatured, disputed, [or] undisputed"[13] and the plan did not list the parties' purchase and sale agreement, the confirmation discharged all claims under it.

We reject the Cheffs' argument that we should apply the reasoning in *In re Maya Construction Co.*[14] and *In re Unioil*[15] and require formal notice of bankruptcy proceedings to postpetition creditors. Neither is persuasive here. In *Maya*, the parties entered into a contract *before* the debtor filed for bankruptcy. Because it involved a prepetition creditor, who had no knowledge or expectation that the debtor would seek bankruptcy protection, it does not apply in this case where the parties entered into the agreement after the Kirkpatricks filed for Chapter 11. In addition, the reasoning in both *Maya* and *Unioil* relies in large part on *City of New York v. New York, New Haven & Hartford Railroad*,[16] in which the United States Supreme Court concluded that a statute required formal notice even when a creditor knew about reorganization proceedings. We agree with the Fifth and Eleventh Circuits that *New York* does not apply in postpetition cases because it was decided on statutory rather than constitutional grounds.[17]

We also find unpersuasive the Cheffs' argument that under *In re Kendavis Holding Co.*, they should not be expected to protect their rights because the Kirkpatricks

---

[12] *Kendavis*, 249 F.3d at 387 (stating, "A potential litigant who knows about a legal proceeding usually has adequate notice that his rights could be jeopardized and should take steps to protect his rights.").

[13] 11 U.S.C. § 101(5)(B).

[14] 78 F.3d 1395 (9th Cir.), *cert. denied*, 519 U.S. 862 (1996).

[15] 948 F.2d 678 (10th Cir. 1991).

[16] 344 U.S. 293, 73 S. Ct. 299, 97 L. Ed. 333 (1953).

[17] *See Christopher*, 28 F.3d at 518.

assured them the property would pass outside the bankruptcy proceedings.[18] Even if the trial court had found the Fitzpatricks made these assurances,[19] unlike the claimant in *Kendavis*, the Cheffs had a second opportunity to protect their rights when they received a copy of the plan in December 1997. Although they obtained a copy of the plan after it was confirmed, they received it in time to move under the bankruptcy code to modify the plan or seek revocation of the confirmation order.[20] Even at this late stage, they could have preserved their contract rights but did not. In addition, the *Kendavis* court based its decision on the peculiar circumstances in that case: the promise to the claimant of a continued pension right came from a large corporation that owed a fiduciary duty to the claimant, who was also unrepresented by counsel.[21] Those considerations are not present here.

In sum, we adopt the Fifth Circuit's rationale in *In re Christopher* that formal notice is not required for postpetition claims. We conclude that the notice here was adequate to satisfy due process, so the Cheffs were required to file their claim in bankruptcy court. Because they failed to do so, either before or after confirmation, they are bound by the bankruptcy court order confirming the Kirkpatricks' reorganization plan and discharging the purchase and sale agreement. We reverse the trial court's specific performance award and remand for trial on the Cheffs' quantum meruit claim for the payments or improvements they made to the property.

II. Attorney Fees.

█ Both parties seek attorney fees on appeal under RAP 18.1. RCW 4.84.330 permits an award of attorney fees and

---

[18] 249 F.3d 383, 388 (5th Cir. 2001) (due process requires that a debtor "refrain from assuring potential claimants that their rights will not be adversely affected during bankruptcy proceedings").

[19] The trial court did not find the Kirkpatricks made these assurances. It simply stated in its finding that the Cheffs testified that they did.

[20] 11 U.S.C. §§ 1127(b), 1144.

[21] *Kendavis*, 249 F.3d at 388.

costs on appeal in any action on a contract that provides for attorney fees and costs to one of the parties.[22] The contract in this case provides an award of reasonable attorney fees and costs to the prevailing party. Although the agreement is discharged, the attorney fee provision is enforceable.[23] We accordingly award attorney fees on appeal to the Kirkpatricks. On remand, the trial court is free to determine how much in fees to award.

Reversed and remanded.

BAKER and ELLINGTON, JJ., concur.

Appellants' motion for reconsideration granted, respondents' motion for reconsideration denied, and opinion modified November 4, 2003.

---

[22] *Bingham v. Lechner*, 111 Wn. App. 118, 134, 45 P.3d 562 (2002), *review denied*, 149 Wn.2d 1018 (2003).

[23] *Stryken v. Panell*, 66 Wn. App. 566, 572, 832 P.2d 890 (1992) (concluding a party may avail itself of a contract's attorney fee clause even if the court determines the contract does not exist or is otherwise unenforceable).