[No. 49560-7-I.   Division One.   April 8, 2002.]

RONALD BINGHAM, *as Personal Representative, Respondent*, v. TIMOTHY LECHNER, *Defendant*, CHRISTOPHER DEMOPOLIS, *Appellant.*

*James E. Lobsenz* (of *Carney, Badley, Smith & Spellman*), for appellant.

*Jeremiah M. McCormick* (of *McCormick Law Offices*) and *Daniel R. Fjelstad* (of *Grutz, Scott & Kinney*), for respondent.

SCHINDLER, J. — Christopher Demopolis appeals the trial court's judgment that permanently restrained him from foreclosing on a deed of trust Bernice Bingham had given Demopolis to secure a promissory note. The trial court concluded that the statute of limitations barred Demopolis's nonjudicial foreclosure proceeding. The court also denied Demopolis's request to offset the amount owed on the notes against the attorney fees it awarded Ronald Bingham, Bernice Bingham's personal representative. We agree with the trial court that Demopolis's nonjudicial foreclosure proceeding is time barred. The trial court did not abuse its discretion in denying Demopolis's request for an offset. Demopolis was not entitled to offset the amounts due on the notes against the attorney fees the trial court awarded Bingham. Accordingly, we affirm the trial court. Bingham is the prevailing party on appeal. We grant his request for an award of attorney's fees.

## FACTS

Between January 1989 and April 1991, Bernice Bingham and her son, Ronald Bingham, cosigned eight promissory

notes payable to Demopolis.[1] To secure payment of the notes, Bernice Bingham executed deeds of trust on her home.

On July 13, 1993, Demopolis instituted nonjudicial foreclosure proceedings on the deed of trust that secured the January 25, 1989 note. A trustee's sale of the property was scheduled for December 17, 1993. In October 1993, Bernice Bingham filed an action seeking to have the trustee's sale restrained and seeking damages on the grounds that the notes were usurious, violated the Consumer Protection Act and were fraudulent.[2] Although motions to restrain the sale were filed between October 22, 1993 and February 15, 1994, the trial court did not issue an order restraining the sale and Demopolis did not proceed with the foreclosure.

Bernice Bingham died in April 1994. Ronald Bingham was appointed personal representative of her estate and was substituted as plaintiff in the lawsuit.[3] On June 17, 1994, Demopolis filed a creditor's claim against her estate, seeking the principal on all eight notes plus interest and attorney fees in the amount of $163,204.73. The estate rejected the claim, and Demopolis filed a lawsuit challenging the rejection. The lawsuit was dismissed without prejudice on May 4, 2000. Demopolis did not appeal the dismissal.[4]

Prior to trial, the estate's motion for summary judgment was granted. The trial court ruled as matter of law that the interest rate for each of the promissory notes was usurious.

[1] The notes had a face value of approximately $47,000 and an interest rate between 12 percent and 28 percent and a default interest rate between 18 percent and 45 percent.

[2] The lawsuit was filed against Demopolis and the successor trustee, Timothy Lechner. For purposes of this appeal, we will refer to the trustee as "Demopolis."

[3] Ronald Bingham appears here only as personal representative, and not in a personal capacity. Ronald Bingham filed personal bankruptcy on June 2, 1994. The bankruptcy court refused to permit Demopolis to proceed with foreclosure proceedings against Ronald Bingham's bankruptcy estate.

[4] In the findings and conclusions the trial court found: "The status of the estate is that Demopolis's claim has been rejected, that rejection is a final action by the estate and no longer reviewable as Demopolis did not appeal the dismissal of his lawsuit challenging the rejection of his claim." Clerk's Papers (CP) at 381.

The order provided that to the extent Demopolis could prove at trial that the loans were made for business purposes, he could avoid the statutory consequences for usurious loans.[5]

Because the answer on file did not correspond to Bingham's second amended complaint, the court requested Demopolis to file a revised answer to read to the jury at the beginning of the trial. A few days before trial began, for the first time and without leave of court, he asserted a counterclaim, seeking recovery of the principal and interest on all eight promissory notes plus attorney fees and costs.[6] Bingham objected to the counterclaim. The status of the counterclaim was not addressed when the trial commenced.

A jury trial was held in October 1995 to decide whether the notes were for personal or business purposes. The jury found that four of the promissory notes were primarily for personal purposes and four were primarily for business purposes. It also found in Demopolis's favor on the fraud claim, finding that he did not misrepresent any material fact in connection with the loans. With respect to Bingham's Consumer Protection Act claim, the jury found each of the elements, except it did not find that any unfair or deceptive act or practice occurred in trade or commerce.[7]

On December 2, 1995, after trial, but before judgment was entered, Bingham filed a motion to strike Demopolis's counterclaim on the grounds that it was submitted without leave of court and that the estate had valid defenses.

On March 8, 1996 the trial court entered judgment on the jury verdict and awarded attorney fees to Bingham in the amount of $10,525. Based on the jury verdict, the court found four notes were usurious and discharged the obligation on those notes. The court dismissed the Binghams'

---

[5] RCW 19.52.030.

[6] The counterclaim was essentially identical to the creditor's claim Demopolis had unsuccessfully filed against Bernice Bingham's estate.

[7] However, the four usurious notes constituted per se violations of the Consumer Protection Act even though they did not occur in trade or commerce. See RCW 19.52.036.

claims as to the other four notes that were not usurious, including the January 1989 promissory note, and reserved ruling on the issue of whether the nonjudicial foreclosure of the January 1989 deed of trust should be restrained along with the issue of attorney fees relating thereto. Again, following entry of this judgment, Demopolis made no effort to complete or otherwise act on the nonjudicial foreclosure proceedings.

On the same day judgment was entered, the court filed an order that permitted Demopolis to file and serve his revised answer, including the counterclaim. Bingham appealed the judgment. The trial court did not enter judgment on Demopolis's counterclaim.

In an unpublished opinion filed on August 25, 1997, this court affirmed the judgment and the jury's verdict.[8] This court also affirmed the award of attorney fees to Bingham.[9] This court, however, reversed the trial court's order entered posttrial allowing Demopolis to file the counterclaim seeking recovery of the principal on all eight notes, plus interest and attorney fees. The court stated:

> There is no apparent reason why the counterclaim could not have been added earlier. The bankruptcy stay may have prevented Demopolis from proceeding against Ronald Bingham and his bankruptcy estate, but it did not prevent him from proceeding against Mrs. Bingham's probate estate. The prejudice resulting from inclusion of the counterclaim in the present action after the jury's verdict was rendered, and the lack of excuse for the delay, outweigh any considerations . . . of the possibly compulsory nature of the counterclaim or the possibility that future action by Demopolis on his identical creditor's claim may be precluded by collateral estoppel or res judicata. After the verdict, it is simply too late to regret that Demopolis

---

[8] *Bingham v. Lechner*, noted at 87 Wn. App. 1032, 1997 WL 523923 (Wash. Ct. App. Aug. 25, 1997).

[9] *Id.*, slip op. at 12-13, 1997 WL 523923 at *3. This court also rejected Demopolis's request to dismiss Bingham's appeal, noting that his "belated addition of the counterclaim suggests he was waiting to see the outcome of the verdict before he decided whether it was worthwhile to sue on the notes." *Id.*, slip op. at 8; 1997 WL 523923 at *3.

may have lost his claim by not asserting it in the action already tried.[10]

On August 23, 1999, Demopolis filed an amended notice of trustee's sale, with respect to the deed of trust securing the January 25, 1989, promissory note. Demopolis sought to include two other notes as well, the note signed on August 28, 1989, and the one signed on May 14, 1990.[11] The sale was scheduled for October 1, 1999. On motion of Bingham, the trial court restrained the sale on September 24, 1999, and on September 30, 1999, required payment of funds into the registry of the court as a condition of the continued restraint of the sale.

A bench trial was held on July 12, 2000 on issues relating primarily to whether the statute of limitations barred enforcement of the four promissory notes the jury found were for business purposes.[12]

With respect to the August 28, 1989, May 14, 1990, and April 4, 1991 notes, the court found the statute of limitations barred Demopolis from proceeding to collect on them. No payments had been made on these notes, no bankruptcy stay had issued, and no court action had tolled the statute.

With respect to the January 1989 note, the court found that the July 1993 foreclosure proceedings tolled the statute of limitations.[13] But, the court concluded, the statute

---

[10] *Id.*, slip op. at 7, 1997 WL 523923 at *3.

[11] The note signed April 4, 1991 was not included in the amended notice of trustee's sale.

[12] The issues tried were: (1) whether the statute of limitations bars any action on any of the notes the jury found not to be usurious, (2) whether and to what extent Demopolis's 1993 nonjudicial foreclosure tolled the statute of limitations and whether laches barred the foreclosure because it was commenced in 1993 and not pursued until 1999, (3) the effect, if any, of Ronald Bingham's personal bankruptcy proceedings on the statute of limitations, and (4) the effect, if any, of the creditor's claim Demopolis filed in Bernice Bingham's probate estate and of the court's denial of the claim and subsequent dismissal of a lawsuit contesting the denial.

[13] The trial court found that the statute of limitations was not tolled on the basis of any restraint of the nonjudicial foreclosure. This is because the trial court, in Bernice Bingham's 1993 action for damages and for restraint of the sale, reserved ruling on restraint of the nonjudicial foreclosure of the January 1989 note, but was

commenced running when the originally scheduled sale failed to occur on December 17, 1993 or at the latest within 120 days after that date, and that the statute expired before Demopolis filed the amended notice of sale in August 1999.[14]

The court entered judgment on August 17, 2000, and permanently restrained the nonjudicial foreclosure of the January 1989 deed of trust. The court awarded Bingham judgment against Demopolis in the amount of $19,721.35 "as and for costs and reasonable attorney fees incurred in these proceedings since August 20, 1999, and the defense of King County Superior Court Cause # 99-2-22224-5 SEA, the latter being an action upon the rejected creditor's claim of defendant Demopolis."[15]

Demopolis filed a motion for reconsideration, seeking reconsideration of the court's decision on the statute of limitations issue and seeking an offset of the amount of the notes against the attorney's fee award. The court denied the motion.[16] With respect to the issue of offset, the court stated: "the issue of offset of note obligations to attorney

not presented with the issue again until September 1999. Accordingly, no restraint of the sale arose out of the 1993 lawsuit or out of any other proceeding until 1999.

[14] The court also found that after this court's prior opinion was filed, Bingham, under the belief that Demopolis had abandoned the foreclosure, invested a substantial sum of money in the home secured by the deed of trust. Bingham repaired the roof, installed carpeting, and spent $6,500 to have a new furnace installed.

[15] CP at 361. The court further ordered the Clerk to return to Bingham the money he had previously deposited with the court pursuant to the court's September 30, 1999, order, minus any collection costs allowed the Clerk by law.

[16] The court stated in part:

The 1993 non-judicial foreclosure was abandoned for six years, and pursuit of the foreclosure remedy in 1999 based on a notice of default in 1993 would be barred by laches (which was a defense asserted by Plaintiff) even if the foreclosure proceeding was not terminated as a matter of law, and lapsed, after the original sale date when no action was taken on the sale. Even if the non-judicial foreclosure could be considered viable for an additional 120 days (even though no formal continuance of the sale was sought) the claim would still be barred by the statute of limitations. It remains the opinion of this court that the non-judicial foreclosure would not toll the statute for any period after date of sale, or date of sale plus 120 days.

CP at 426.

fees has not previously been addressed by this court and is not a proper subject of this motion for reconsideration."[17]

Demopolis appealed to the Supreme Court. That court transferred the case here.

## DISCUSSION

*Standard of review*

■ We review the trial court's findings of fact entered in a bench trial to determine whether they are supported by substantial evidence and whether the findings support the court's conclusions of law.[18] Since Demopolis assigns no error to any of the trial court's findings of fact, they are verities on appeal.[19] We review the trial court's conclusions of law de novo to see if they are supported by the trial court's findings of fact.[20]

*Statute of limitations*

■ The statute of limitations on the enforcement of a promissory note is six years.[21] The January 25, 1989 note was due on July 25, 1989. The trial court found, and the parties agree, that the commencement of a nonjudicial foreclosure tolls the statute of limitations.[22] Demopolis instituted his nonjudicial foreclosure on the January 1989 note in July 1993, and thereby tolled the statute of limitations. The question presented is for how long the statute was tolled. Demopolis contends that the tolling never ended and the statute of limitations never restarted. Thus, he argues, the statute of limitations did not bar him from

---

[17] CP at 426.

[18] *State ex rel. Coughlin v. Jenkins*, 102 Wn. App. 60, 63, 7 P.3d 818 (2000).

[19] *In re Habeas Corpus of Santore*, 28 Wn. App. 319, 323, 623 P.2d 702 (1981).

[20] *City of Seattle v. Megrey*, 93 Wn. App. 391, 393, 968 P.2d 900 (1998).

[21] RCW 4.16.040(1) (requiring that an "action upon a contract in writing, or liability express or implied arising out of a written agreement" be commenced within six years).

[22] *See Walcker v. Benson & McLaughlin, P.S.*, 79 Wn. App. 739, 904 P.2d 1176 (1995) (stating that a nonjudicial foreclosure must be initiated within six years after execution of the note or the action will be barred).

reinstituting foreclosure proceedings in 1999. The trial court concluded that the statute was tolled at most only 120 days after the originally scheduled sale date.

Whether the trial court was correct in this conclusion depends on whether the court correctly interpreted RCW 61.24.040(6), which provides:

> The trustee may for any cause the trustee deems advantageous, continue the sale for a period or periods not exceeding a total of one hundred twenty days by a public proclamation at the time and place fixed for sale in the notice of sale or, alternatively, by giving notice of the time and place of the postponed sale in the manner and to the persons specified in RCW 61.24.040(1)(b) and publishing a copy of such notice once in the newspaper(s) described in RCW 61.24.040(3), more than seven days before the date fixed for sale in the notice of sale. No other notice of the postponed sale need be given[.][23]

This statute gives the trustee two alternative ways to continue the sale: by public proclamation or by giving notice in the manner and to the persons specified and publishing the notice in the specified newspapers within the time prescribed. Demopolis argues that the 120-day time limit applies only when the trustee chooses to continue the sale by utilizing the first alternative. He argues that if the trustee chooses to continue the sale by utilizing the second alternative, the 120-day time limit does not apply and as long as the nonjudicial foreclosure proceeding is instituted within the six-year statute of limitations, the tolling that results from instituting the proceeding never ends. Demopolis does not, however, contend that he complied with the second alternative for continuing the sale, nor is there evidence in the record to support the conclusion that he did comply. His argument seems to be that the 120-day limitation applies only if the trustee chooses the first alternative and that if the trustee does nothing except, as here, file an amended notice of sale, the limitation still does not apply and the proceedings may be resumed at any time. We disagree.

---

[23] RCW 61.24.040(6).

A fair reading of the statute is that the 120-day time limitation applies to both alternatives. We disagree with Demopolis's argument that under the "comma rule," his reading of the statute is correct. Under that rule, he argues, the second alternative for continuing the sale contained in RCW 61.24.040(6) is completely set off from the previous portion of the statute by virtue of the commas before and after the word "alternatively," so the 120-day limitation does not apply to the second alternative. He claims the court's opinion in *East Gig Harbor Improvement Ass'n v. Pierce County*[24] compels this conclusion. At issue in that case was the interpretation of the following provision in the Pierce County Code:

> "The action of the Counsel [sic], approving or rejecting a decision of the Examiner, is final and conclusive *unless within thirty (30) days* from the date of the action an aggrieved party or person filed an appropriate action in Superior Court for the purpose of reviewing the action taken, *and serves all necessary parties.*"[25]

With respect to this provision, the court stated:

> The phrase "and serves all necessary parties" is separated from the rest of the sentence by a comma. A comma serves many functions, but its purpose always is to set a phrase apart from the rest of the sentence. . . . In this case the result of setting the phrase "and serve all necessary parties" apart by a comma is to separate it from the 30-day time limitation of Pierce County Code 67.02.160(E). We conclude that the ordinance does not impose a 30-day time limit on serving parties to the appeal of the plat approval.[26]

The court's analysis in *East Gig Harbor* does not, as Demopolis asserts, compel the conclusion that the commas in RCW 61.24.040(6) separate the second alternative from the rest of the sentence. The commas in RCW 61.24.040(6)

---

[24] 106 Wn.2d 707, 724 P.2d 1009 (1986).

[25] Pierce County Code 67.02.160(E) (quoted in *E. Gig Harbor Improvement Ass'n*, 106 Wn.2d at 713).

[26] *E. Gig Harbor Improvement Ass'n*, 106 Wn.2d at 713 (citation omitted).

just set the word "alternatively" off from the rest of the sentence. If the commas were to have the effect Demopolis contends they do, the first comma, or an entirely new one, would have to appear before the word "or" in a manner similar to the way the comma in the provision of the Pierce County Code appears before the word "and." Nor does the court's statement in *East Gig Harbor* that a comma "always" sets off a phrase compel acceptance of Demopolis's argument. A comma can set off a single word as well as a phrase. RCW 61.24.040(6) is properly read to allow the trustee to continue the sale for up to 120 days *by* alternative 1 or *by* alternative 2.[27]

The case Demopolis cites, *Meyers Way Development Ltd. Partnership v. University Savings Bank*,[28] for the proposition that a trustee's sale can be continued for a period longer than 120 days, is factually distinguishable. In that case, the bank continued the trustee's sale several times. The original sale date was December 1, 1989. After the continuances and two periods during which the bankruptcy automatic stay halted the proceedings, the sale finally took place on August 24, 1990. According to Demopolis, excluding the time attributable to the automatic stay, the sale was continued for 136 days. This, he argues, is because the 120-day time limit does not apply under the second alternative means of continuing a trustee's sale. The issue of the validity of the continuances was not before the court in *Meyers Way* and there is nothing to indicate the means by which the bank chose to continue the sale. It may be that the bank chose the first alternative, rather than the second. Here, Demopolis did nothing with respect to the foreclosure between 1993 and 1999 when he filed an amended notice of sale. By contrast, the bank in *Meyers Way*, as far as can be

[27] During oral argument, Demopolis argued, for the first time, that the third comma in RCW 61.24.040(6) further supports his reading of the statute. We need not address an issue raised for the first time at oral argument. RAP 12.1(a); *Apostolis v. City of Seattle*, 101 Wn. App. 300, 306, 3 P.3d 198 (2000). Moreover, his argument with respect to the third comma is without merit for the same reason his other argument about the commas is without merit.

[28] 80 Wn. App. 655, 910 P.2d 1308 (1996).

ascertained from the opinion, "formally" continued the sale by some affirmative action. While the case may be cited in support of the proposition that a trustee may continue a sale for a period greater than 120 days, it does not stand for the proposition that nonjudicial foreclosure proceedings can remain pending indefinitely in the face of years of inaction by the trustee.

In sum, the trial court's reading of RCW 61.24.040(6) was correct. Demopolis's filing of foreclosure proceedings in July 1993 tolled the statute of limitations. Pursuant to RCW 61.24.040(6), he was entitled to continue the sale, originally scheduled for December 17, 1993, for 120 days. His failure to do that restarted the statute of limitations either on December 18, 1993, the date scheduled for the foreclosure or 120 days thereafter, which was April 17, 1994. Demopolis's attempt to foreclose in August 1999 was too late. The court did not err by permanently restraining the nonjudicial foreclosure.[29]

*Offset*

Demopolis argues that the trial court should have offset the amount due under the promissory notes against the award of attorney fees to Bingham.[30] Demopolis is attempting to accomplish, by seeking a setoff, the same thing he attempted to accomplish by filing the claim against the estate and the untimely counterclaim in Bingham's October 1993 litigation. Here, however, he seeks to recover the money not against any judgment awarded to Bingham on the underlying debt, but rather against the attorney fee award.

---

[29] Because we hold that Demopolis's claim is time barred, we need not address whether it is also barred by laches.

[30] By order dated September 12, 2000, the court denied Demopolis's motion, stating "the issue of offset of note obligations to attorney fees has not previously been addressed by this court and is not a proper subject of this motion for reconsideration." CP at 246. It appears, however, that Demopolis raised the offset issue in a "Memorandum re Attorney Fees," filed August 15, prior to the judgment awarding Bingham attorney fees, and again in an August 28 "Renewed Motion for Reconsideration."

132

Demopolis relies primarily on *Seattle-First National Bank v. Siebol.*[31] In that case, the debtors raised, in a counterclaim and as an affirmative defense in the bank's action to foreclose on the deeds of trust securing the loan, a loan officer's breach of an oral promise to provide funds for improvements and inventory financing. The debtors did not challenge the foreclosure, which the court granted. The trial court held that the counterclaim for affirmative relief was barred by the statute of limitations, but granted an equitable setoff on the affirmative defense under a promissory estoppel theory.

Demopolis relies on the portion of the court's opinion in *Siebol* pertaining to the debtors' affirmative defense. In connection with its analysis, the court noted the settled rule that statutes of limitations do not run against defenses arising out of the transaction sued upon. Accordingly, even though the debtors' counterclaim for breach of an oral promise was time barred, the debtors were not barred on the basis of the statute of limitations from raising it as an affirmative defense. On appeal, the court affirmed the trial court's decision to grant an equitable offset to the debtors under a promissory estoppel theory, finding that it would have been unjust not to enforce the loan officer's promise in light of the debtors' justifiable change of position. The court rejected the debtors' argument that, in light of the court's award of an equitable offset, the bank should not recover attorney fees as the prevailing party. The court reasoned that the bank was entitled to attorney fees because it prevailed in its action to enforce the loan and because the promissory note, the mortgage, security interests, and deeds of trust provided for collection costs including attorney fees. The court stated that the award of an equitable offset did not make the debtors prevailing parties entitled to attorney fees under RCW 4.84.330.

The critical difference between *Siebol* and this case is that, in *Siebol*, the debtors raised their affirmative claim for

[31] 64 Wn. App. 401, 824 P.2d 1252 (1992).

relief in a timely manner and sought the setoff against the judgment on the underlying debt, not against the award of attorney fees. We held in the prior appeal in this case that Demopolis's untimely counterclaim was stricken, and he was precluded from obtaining a setoff against any judgment awarded Bingham. Here, Demopolis seeks a setoff against an award of attorney fees. Contrary to his assertions, *Siebol* does not support his position. The trial court properly denied his request for an offset.

Demopolis also contends that *Bakke v. Buck*[32] and *Jordan v. Bergsma*[33] support his claim for an offset. In *Bakke*, the debtors were permitted to set off usury penalties they were awarded against the loan amount, even though the debtors failed to file a creditor's claim against the deceased lender's estate. The amount of the setoff was limited to the debt amount. Unlike the present case, the debtors in *Bakke* sought an offset against the amount of the judgment for the underlying debt, not the amount of an attorney fee award. The court in *Jordan* reiterated the rule that a statute of limitations does not extinguish the underlying obligation. While that may be true, there still must be a statutory or equitable basis upon which to allow a setoff of the debt for the underlying obligation. No case cited by Demopolis supports his request for an offset against the attorneys fees awarded to Bingham. In each of the cases relied on by Demopolis, the offset was against the judgment amount.

Finally, although the trial court did not rule on Demopolis's first request for an offset of the promissory notes against the attorneys fees awarded, it did not abuse its discretion in concluding on the second motion to reconsider that the request should not be considered under CR 59(a)(6).

The party that prevails in a proceeding to foreclose a deed of trust is entitled to an award of fees if the deed of trust

---

[32] 21 Wn. App. 762, 587 P.2d 575 (1978).

[33] 63 Wn. App. 825, 822 P.2d 319 (1992).

and/or the promissory note provide for such an award.[34] Here, Bingham successfully defended against Demopolis's 1993 nonjudicial foreclosure proceeding, prevailed in Demopolis's probate proceeding challenging Bernice Bingham's estate's rejection of his creditor's claim, and prevailed in the litigation from which Demopolis appeals here. Both the promissory note and the deed of trust provide for an award of attorney fees in a collection action. The trial court appropriately awarded Bingham attorney fees as the prevailing party under RCW 4.84.330.

*Attorney fees on appeal*

■ Bingham requests an award of attorney fees on appeal. RCW 4.84.330 permits the prevailing party to recover attorney fees and costs in any action on a contract where the contract provides for an award of fees and costs to one of the parties.[35] The statute authorizes an award of attorney fees on appeal to the prevailing party.[36]

Here, both the promissory note and the deed of trust provide for an award of attorney fees and costs to one of the parties. Bingham has prevailed on appeal with respect to Demopolis's attempt to foreclose on the deed of trust securing the January 1989 promissory note. Accordingly, as the prevailing party on appeal, Bingham is entitled to an award of attorney fees and costs under either the promissory note or the deed of trust.

---

[34] *See* RCW 4.84.330.

[35] The statute provides: "In any action on a contract or lease entered into after September 21, 1977, where such contract or lease specifically provides that attorney's fees and costs, which are incurred to enforce the provisions of such contract or lease, shall be awarded to one of the parties, the prevailing party, whether he is the party specified in the contract or lease or not, shall be entitled to reasonable attorney's fees in addition to costs and necessary disbursements."

[36] *Pederson v. Potter*, 103 Wn. App. 62, 74, 11 P.3d 833 (2000), *review denied*, 143 Wn.2d 1006 (2001).

## CONCLUSION

We affirm the trial court's judgment. We grant Bingham's request for an award of attorney fees on appeal. He is directed to comply with RAP 18.1.

COLEMAN and AGID, JJ., concur.