# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
# DIVISION ONE

WEST COAST, INC., a Washington corporation, )
          Appellant, )
          v. )
CAMANO CO-OPERATIVE WATER AND POWER COMPANY, a Washington corporation, )
          Respondent. )

No. 69255-1-I

ORDER GRANTING MOTION FOR RECONSIDERATION, WITHDRAWING OPINION, AND SUBSTITUTING OPINION

The respondent, Camano Co-Operative Water and Power Company, has filed a motion for reconsideration. The appellant, West Coast, Inc., has filed a response. The court has taken the matter under consideration and has determined that the motion for reconsideration should be granted.

Now, therefore, it is hereby

ORDERED that the motion for reconsideration is granted; and, it is further

ORDERED that the opinion in the above-referenced case filed November 4, 2013, is withdrawn and a substitute opinion be filed in its place.

Done this 17th day of March, 2014.

FOR THE COURT:

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

WEST COAST, INC., a Washington corporation, )

      Appellant, )

v. )

CAMANO CO-OPERATIVE WATER AND POWER COMPANY, a Washington corporation, )

      Respondent. )

No. 69255-1-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: March 17, 2014

GROSSE, J. — A contract missing material terms is nothing more than an agreement to agree, unenforceable as a matter of law. Here, the location of the water pipes was an essential element of the parties' agreement to install pipe for water distribution to the proposed housing sites. Because the parties did not agree to where the water pipes would be located, there was no "meeting of the minds" on the essential terms and, thus, no contract. We affirm the trial court's decision that there was no contract.

The trial court awarded Camano Co-Operative Water and Power Company (Co-op) a judgment for unpaid dues and assessments owed on 21 shares purchased by West Coast, Inc. Although West Coast could have asked the Co-op to repurchase 20 of those shares if its development was not approved, it never did so and is therefore liable for the dues owed on those shares.

FACTS

In January 2004, West Coast signed a purchase and sale agreement for property on Camano Island with the intent of developing single family homes on the property, known as Saratoga Ridge. In order to develop the land, Island County required West Coast to provide a fire hydrant with sufficient water flow to the property site for fire services. Water was provided by the Co-op, a small cooperative utility owned by the residential property owners on the west side of Camano Island. The Co-op contracts with Water & Wastewater Services, LLC, owned by Kelly Wynn, to manage the water system.

John Robinett, the principal of West Coast, contacted Wynn and the Co-op board regarding water requirements. Wynn faxed Robinett a two-page memorandum and three pages of drawings of the water distribution system created by the Co-op's engineer, George Bratton, for a previously interested party. The drawings depict the existing water system in the area in 2004. The drawings show the location of the only 4-inch water main to be on the west side of West Camano Drive. The Bratton memorandum contained two options for installing the required fire flow to Saratoga Ridge. Option one was from the south; option two approached from the north. Robinett wanted to pursue option one, which would provide 500 gallons per minute. The Bratton memorandum described option one as "1,910 feet of 4-inch AC [(asbestos cement)] pipe on West Camano Dr. south of Uplands road." Sometime after the Bratton memorandum was created, the word "south" was crossed out of that phrase and the word "north" was handwritten in.

2

At the same time, the Co-op wanted to improve its antiquated water system and orally agreed to cost share with West Coast, intending to make the needed upgrades at the same time West Coast installed a new main line. This was never put into writing.

In February 2005, Bratton prepared bid documents for installing the water main. Those documents were approved by the Co-op and forwarded to the Department of Health (Department). The Department eventually granted approval after certain adjustments. The approval was then sent to West Coast, which balked because the plans required three crossovers and eleven residential service connections on its installation of an 8-inch water main, significantly increasing the project's cost.

West Coast sued the Co-op for breach of contract/anticipatory repudiation, negligent and intentional misrepresentation, and estoppel. The complaint alleged that the Co-op violated its agreement to cost share and thus breached the contract. On April 4, 2011, the trial court granted summary judgment dismissal of West Coast's complaint, finding that the cost-sharing claim was based on an oral agreement and was time barred because more than three years had elapsed.

On reconsideration, the trial court re-affirmed its decision dismissing the action for cost sharing as time barred but determined that there was still an issue about whether the Co-op had placed additional conditions on its agreement as alleged in the complaint. The Co-op then brought a counterclaim for unpaid membership fees due for West Coast's purchase of 20 additional shares. After a bench trial on the remaining issues, the court found that there was no binding

agreement between the parties and dismissed the breach of contract claim. The court found in favor of the Co-op on its counterclaim for money owing on the shares for the Co-op. Because the Co-op bylaws provided for attorney fees, the court also awarded fees and costs expended for that portion of the litigation. West Coast appeals.

## ANALYSIS

"The touchstone of contract interpretation is the parties' intent."[1] Washington courts follow the "objective manifestation" theory of contracts.[2] A valid contract requires an objective manifestation of mutual assent to its terms, rather than any unexpressed subjective intent of the parties.[3] Courts will not impose obligations that the parties did not assume for themselves.[4] A formation of a contract requires that there be an objective manifestation of mutual assent of both parties.[5] Intent may be imputed based on the ordinary meaning of the words within the contract.[6] Words in a contract are given their ordinary, usual, and popular meaning unless the entirety of the agreement clearly demonstrates a contrary intent.[7]

---

[1] Tanner Elec. Coop. v. Puget Sound Power & Light Co., 128 Wn.2d 656, 674, 911 P.2d 1301 (1996).
[2] Hearst Commc'ns, Inc. v. Seattle Times Co., 154 Wn.2d 493, 503, 115 P.3d 262 (2005); State v. R.J. Reynolds Tobacco Co., 151 Wn. App. 775, 783, 211 P.3d 448 (2009).
[3] Hearst, 154 Wn.2d at 503.
[4] Condon v. Condon, 177 Wn.2d 150, 162-63, 298 P.3d 86 (2013).
[5] P.E. Sys., LLC v. CPI Corp., 176 Wn.2d 198, 207, 289 P.3d 638 (2012).
[6] Hearst, 154 Wn.2d at 503.
[7] Hearst, 154 Wn.2d at 504 (citing Universal/Land Constr. Co. v. City of Spokane, 49 Wn. App. 634, 637, 745 P.3d 53 (1987)).

There must be agreement on the essential terms to give rise to a contract.[8] The findings of fact are critical to the resolution of whether there was a contract and those findings are reviewed to determine whether substantial evidence exists to support them.[9] The application of the law to the facts is a question of law and subject to de novo review.[10] The court reviews de novo the trial court's conclusions of law to determine if they are supported by the findings of fact.[11] Unchallenged findings of fact are verities on appeal.[12]

The trial court entered extensive findings of fact and conclusions of law which support its ruling that West Coast's breach of contract claim was based on a complete misunderstanding of the water system along West Camano Drive. West Coast believed it was replacing a 4-inch main located along the east side of West Camano Drive with an 8-inch PVC (polyvinyl chloride) pipe to be installed on that same side. West Coast relied on a misinterpretation of the Bratton memorandum, thinking that its chosen option, option one, described work "north" of Uplands Road, when in reality it described work "south" of Uplands Road.[13] Unchallenged finding of fact 13 states that the only 4-inch main on the street was located on the west side.

---

[8] Condon, 177 Wn.2d at 208-09.
[9] Sunnyside Valley Irr. Dist. v. Dickie, 149 Wn.2d 873, 879, 73 P.3d 369 (2003).
[10] Brundridge v. Fluor Fed. Servs., Inc., 164 Wn.2d 432, 441, 191 P.3d 870 (2008).
[11] Bingham v. Lechner, 111 Wn. App. 118, 127, 45 P.3d 536 (2002) (citing City of Seattle v. Megrey, 93 Wn. App. 391, 393, 968 P.2d 900 (1998)).
[12] Brundridge, 164 Wn.2d at 439-40.
[13] Exhibit 71 shows Bratton's memorandum with the word "south" struck out and replaced with the handwritten word "north."

The parties' discussions "never resolved how West Coast's new water main was going to 'replace' the existing main, [or] how existing customers would be reconnected (if at all)." Indeed, Robinett testified about a letter he sent transmitting his signed extension agreement in which he acknowledged that the contract had missing elements. Robinett admitted on cross-examination that the agreement does not specifically state where the 8-inch pipe would be placed or in which direction any pipe laying would start.

Placement of the 8-inch pipe was an essential element of the agreement. The court's extensive findings support its conclusion that there was no objective manifestation of this essential element. The trial testimony showed that each party objectively manifested different intents, and thus, there was no "meeting of the minds" on how the agreement would work.[14] There was, therefore, no enforceable contract.

Nor is there any merit to West Coast's claim for promissory estoppel. "Promissory estoppel requires the existence of a promise. A promise is a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promissee in understanding that a commitment has been made."[15] Here, there is no promise. The mere fact that there is a written document entitled "Agreement" is insufficient to sustain a finding that there was, in fact, a valid contract. We affirm the trial court's holding that no contract existed.

---

[14] In re G.W.-F, 170 Wn. App. 631, 640, 285 P.3d 208 (2012).
[15] Tacoma Auto. Mall, Inc. v. Nisssan N. Am., Inc., 169 Wn. App. 111, 127, 279 P.3d 487 (2012) (internal quotation marks and citations omitted).

## Counterclaim for dues owed Co-op

The trial court determined that West Coast owed the Co-op $107,894.65 in past dues for its 21 shares. As an owner of the undeveloped land, West Coast owned one share in the Co-op. When West Coast learned that the cost of shares was increasing from $5,000 to $7,000, West Coast purchased 20 additional shares for the proposed home sites on the property. When West Coast transmitted the $100,000 check for payment of the 20 additional shares, it did so with the following letter:

> Please find enclosed a check for $100,000 to pay for 20 water shares for the Plat of Saratoga Ridge. It is understood that there is currently a share that runs with the existing lot. In the event that the Plat was not approved as proposed or approved for less than the proposed 21 lots, West Coast, Inc. may sell back to the Co-op any unused water shares for the same price they were purchased for ($5,000.00).

West Coast contends that this conditional offer was accepted by the Co-op when it cashed the check. West Coast argues that the Co-op is obligated to purchase the shares back because West Coast's version of the placement of the water pipes was not accepted. West Coast is incorrect. The letter merely states that West Coast "may" sell back the shares to the Co-op for the same price purchased. West Coast made no demand to the Co-op to buy back the shares, and thus, the Co-op was under no obligation to do so.

West Coast paid the dues and assessments for the first several months, but ceased making payments when it was not getting approval for its project. West Coast seems to rely on its nonpayment of dues as its expression that it wanted to sell back the shares to the Co-op. But as evidenced by Co-op board

minutes, West Coast had been late in paying its dues previously. Thus, nonpayment of dues cannot be considered a demand for the Co-op to repurchase those shares.

## Attorney Fees

Washington permits a party to recover attorney fees under a statute, a contract, or a well-recognized principle of equity.[16] Here, the bylaws of the Co-op contain a proviso for attorney fees. This court reviews an award of attorney fees for abuse of discretion.[17] An abuse of discretion is a manifestly unreasonable decision or one based on untenable grounds or made for untenable reasons.[18]

The Co-op supported its motion with a declaration from its attorney and itemized billing invoices detailing the hours of work. The trial court found the hours worked and rates charged reasonable. West Coast presented no evidence to contradict the Co-op's claim. We affirm the trial court's award of $1,896.00 as reasonable attorney fees, $200.00 in statutory attorney fees, and $240.00 in costs.

The Co-op also requests attorney fees on appeal citing RAP 18.1. A contractual proviso in providing for attorney fees at trial supports an award of attorney fees on appeal. Because the bylaws provide for an award of attorney fees, we grant the request for fees that are attributable to that portion of the appeal.

---

[16] Torgerson v. One Lincoln Tower, LLC, 166 Wn.2d 510, 525, 210 P.3d 318 (2009) (citing Quality Food Ctrs. v. Mary Jewell T, LLC, 134 Wn. App. 814, 817, 142 P.3d 206 (2006)).

[17] Ethridge v. Hwang, 105 Wn. App. 447, 460, 20 P.3d 958 (2001).

[18] Scott Fetzer Co. v. Weeks, 122 Wn.2d 141, 147, 859 P.2d 1210 (1993).

8

Affirmed.

WE CONCUR: