IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| CEDAR WEST OWNERS ASSOCIATION, a Washington nonprofit corporation, | ) ) ) ) | No. 76812-3-I |
| | ) | DIVISION ONE |
| Appellant, | ) ) | |
| v. | ) ) | |
| NATIONSTAR MORTGAGE, LLC, a Delaware Limited Liability Company, | ) ) ) ) | PUBLISHED OPINION |
| Respondent, | ) ) ) | |
| QUALITY LOAN SERVICE CORPORATION OF WASHINGTON, a Washington corporation, | ) ) ) ) | |
| Defendant. | ) ) | FILED: February 5, 2019 |

COURT OF APPEALS DIV I
STATE OF WASHINGTON
2019 FEB -5 AM 10:47
FILED

SCHINDLER, J. — Cedar West Owners Association appeals dismissal of the quiet title action against Nationstar Mortgage LLC. Cedar West asserts the nonjudicial foreclosure on a deed of trust that secures an installment payment promissory note is barred by the six-year statute of limitations. We reject the argument that the first missed payment on an installment promissory note triggers the six-year statute of limitations to foreclose on the deed of trust. We adhere to our decision in Edmundson v. Bank of America, N.A., 194 Wn. App. 920, 378 P.3d 272 (2016), and hold the six-year statute of

limitations on an installment promissory note is triggered by each missed monthly installment payment at the time it is due. We also hold that when a nonjudicial foreclosure action tolls the statute of limitations involves a factual inquiry. In this case, the undisputed record establishes the notice of trustee's sale tolled the statute of limitations and Nationstar Mortgage is entitled to foreclose on the installment payments due on and after November 1, 2010. We affirm dismissal of the quiet title lawsuit against Nationstar Mortgage and the order allowing the trustee to schedule a nonjudicial foreclosure sale.

## FACTS

The material facts are not in dispute. In June 2008, Countrywide Bank FSB loaned Judith Allen $158,847 to purchase a condominium unit located at 1910 West Casino Road, Apartment 111, in Everett. Allen agreed to a 30-year mortgage and monthly payments.

On June 16, 2008, Allen signed a promissory note for the loan amount. The promissory note requires Allen to make monthly payments until July 1, 2038. Allen executed a "Deed of Trust" on the condominium unit to secure the promissory note. The Deed of Trust states:

> Borrower owes Lender the principal sum of
> ONE HUNDRED FIFTY EIGHT THOUSAND EIGHT HUNDRED FORTY
> SEVEN and 00/100 Dollars (U.S. $158,847.00). This debt is evidenced by
> Borrower's note dated the same date as this Security Instrument ("Note"),
> which provides for monthly payments, with the full debt, if not paid earlier,
> due and payable on JULY 01, 2038. This Security Instrument secures to
> Lender: (a) the repayment of the debt evidenced by the Note, with
> interest, and all renewals, extensions and modifications of the Note; (b)
> the payment of all other sums, with interest, advanced under paragraph 7
> to protect the security of this Security Instrument; and (c) the performance
> of Borrower's covenants and agreements under this Security Instrument
> and the Note. For this purpose, Borrower irrevocably grants and conveys

to the Trustee, in trust, with power of sale, the following described property located [at] . . . 1910 W CASINO RD APT 111, EVERETT Washington 98204-2114 ("Property Address").

If Allen defaults on the monthly payments, the Deed of Trust gives the lender the discretion to accelerate the debt and gives the borrower the right to reinstate.

> **9.    Grounds for Acceleration of Debt.**
> **(a)    Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:
>> (i)    Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or
>> (ii)    Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.
>
> . . . .
> **10.    Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.[1]

The Deed of Trust designates LS Title of Washington as the "Trustee" and Mortgage Electronic Registration Systems Inc. as the beneficiary "solely as nominee for Lender."

---

[1] Boldface in original.

The Deed of Trust incorporates a "Condominium Rider." Allen executed the Condominium Rider on June 16, 2008 and agreed to "pay all dues and assessments imposed pursuant to the legal instruments creating and governing" Cedar West Condominiums. The Deed of Trust and Condominium Rider were recorded on July 10, 2008.

Allen made monthly payments on the promissory note through May 2010. Allen did not make the June 1, 2010 payment or any of the following monthly payments. Allen also stopped paying condominium dues and assessments.

Cedar West Owners Association (Cedar West) foreclosed its lien for unpaid dues and assessments Allen owed in the amount of $17,371.34. Cedar West bid the amount owed at the foreclosure. As the highest bidder, Cedar West acquired title to the condominium unit. Cedar West recorded a "Trustee's Deed" on April 24, 2015. Cedar West rents the condominium unit.

In September 2015, the lender appointed Quality Loan Service Corporation of Washington (Quality Loan) as the successor Trustee under the Deed of Trust. On October 7, 2015, Quality Loan sent a notice of default to Allen. The notice of default states Allen is in default on the obligation secured by the promissory note and Deed of Trust. The notice states Allen is in arrears and had not paid principal and interest from June 1, 2010 through October 15, 2015 in the amount of $71,460.38; advances and late charges of $567.90; and "other charges, costs and fees" of $960.64.

The notice of default states the failure to either reinstate or cure the default within 30 days by paying $72,988.92 "may lead to recordation, transmittal and publication of a

Notice of Sale" and sale of the condominium unit "at public auction."

> **<u>REINSTATEMENT: IMPORTANT! PLEASE READ!</u>**
> UNTIL SUCH TIME AS A NOTICE OF TRUSTEE'S SALE IS RECORDED, THE ESTIMATED TOTAL AMOUNT NECESSARY TO REINSTATE YOUR NOTE AND DEED OF TRUST IS THE SUM OF PARAGRAPHS 2 AND 3 IN THE AMOUNT OF **$72,988.92**, PLUS ANY MONTHLY PAYMENTS, LATE CHARGES, OR BENEFICIARY COSTS WHICH HAVE BECOME DUE SINCE THE DATE OF THIS NOTICE OF DEFAULT. Any new defaults not involving payment of money that occur after the date of this notice must also be cured in order to effect reinstatement. **<u>In addition, because some of the charges can only be estimated at this time, and because the amount necessary to reinstate may include presently unknown expenditures required to preserve the property or to comply with state or local law, it will be necessary for you to contact the trustee before the time you tender reinstatement so that you may be advised of the exact amount you will be required to pay.</u>**[2]

In July 2016, the lender assigned the promissory note and the Deed of Trust to Nationstar Mortgage LLC (Nationstar).

On October 18, 2016, Quality Loan recorded the "Notice of Trustee's Sale." The notice states condominium unit 111 located at 1910 West Casino Road is subject to a Deed of Trust recorded on June 16, 2008 and the amount in arrears is $97,163.75. The notice states the sale will be discontinued if the amount in default is paid 11 days before the sale date of February 24, 2017.

### <u>NOTICE OF TRUSTEE'S SALE</u>

. . . .

. . . .

III.    The default(s) for which this foreclosure is made is/are as follows: Failure to pay when due the following amounts which are now in arrears: **$97,163.75**.

IV.    The sum owing on the obligation secured by the Deed of Trust is: The principal sum of **$155,048.43**, together with interest as provided in the Note from **5/1/2010** on, and such other costs and fees as are provided by statute.

---

[2] Emphasis in original; boldface in original.

5

V.    The above-described real property will be sold to satisfy the expense of sale and the obligation secured by the Deed of Trust as provided by statute.  Said sale will be made without warranty, expressed or implied, regarding title, possession or encumbrances on **2/24/2017**. The defaults referred to in Paragraph III must be cured by **2/13/2017** (11 days before the sale date), or by other date as permitted in the Note or Deed of Trust, to cause a discontinuance of the sale.  The sale will be discontinued and terminated if at any time before **2/13/2017** (11 days before the sale), or by other date as permitted in the Note or Deed of Trust, the default as set forth in Paragraph III is cured and the Trustee's fees and costs are paid.

. . . .

**THIS NOTICE IS THE FINAL STEP BEFORE THE FORECLOSURE OF YOUR HOME.**

You have only 20 DAYS from the recording date of this notice to pursue mediation.[3]

On February 10, 2017, Cedar West filed a lawsuit against Quality Loan and Nationstar to quiet title to the property and enjoin the trustee's sale.  Cedar West alleged the six-year statute of limitations barred the nonjudicial foreclosure.  The court entered an order enjoining the foreclosure.

Cedar West stipulated Quality Loan would not participate in the litigation but "shall be bound by whatever order or judgment is issued in the Action by the Court regarding the Property and Deed of Trust."

Nationstar filed a CR 12(b)(6) motion to dismiss the lawsuit.  Nationstar argued the six-year statute of limitations does not bar the nonjudicial foreclosure action. Nationstar asserted the six-year statute of limitations on an installment promissory note begins to run when the borrower does not pay the amount due for each monthly installment payment.

---

[3] Emphasis in original; boldface in original.

Cedar West argued there is no dispute Allen defaulted on her obligation under the promissory note. Cedar West claimed the six-year statute of limitations is triggered when Allen did not make the first missed installment payment on June 1, 2010. Cedar West asserted that because the Trustee did not record the Notice of Trustee's Sale until October 18, 2016, the six-year statute of limitations barred the nonjudicial foreclosure action.

The court dismissed the lawsuit against Nationstar with prejudice, dissolved the injunction restraining the trustee's sale, and entered an order allowing a trustee's sale on the property.

## ANALYSIS

Cedar West contends the court erred in dismissing the lawsuit against Nationstar to quiet title and restrain foreclosure and the trustee's sale.

We review the decision to dismiss under CR 12(b)(6) de novo as a question of law. FutureSelect Portfolio Mgmt., Inc. v. Tremont Grp. Holdings, Inc., 180 Wn.2d 954, 962, 331 P.3d 29 (2014). Where, as here, a party submits evidence that was not in the original complaint, such submissions convert a motion to dismiss to a motion for summary judgment. McAfee v. Select Portfolio Servicing, 193 Wn. App. 220, 226, 370 P.3d 25 (2016).

We review summary judgment dismissal de novo. Kofmehl v. Baseline Lake, LLC, 177 Wn.2d 584, 594, 305 P.3d 230 (2013). Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); Kofmehl, 177 Wn.2d at 594.

7

Cedar West claims it is entitled to quiet title to the condominium because the six-year statute of limitations bars foreclosure of the Deed of Trust that secures the promissory note. RCW 7.28.300 provides:

> The record owner of real estate may maintain an action to quiet title against the lien of a mortgage or deed of trust on the real estate where an action to foreclose such mortgage or deed of trust would be barred by the statute of limitations.

An action on a contract or agreement in writing "shall be commenced within six years." RCW 4.16.040(1). The promissory note and the deed of trust are written contracts subject to the six-year statute of limitations under RCW 4.16.040(1). Edmundson v. Bank of Am., N.A., 194 Wn. App. 920, 927, 378 P.3d 272 (2016); Merceri v. Bank of N.Y. Mellon, 4 Wn. App. 2d 755, 759, ___ P.3d ___ (2018); Westar Funding, Inc. v. Sorrels, 157 Wn. App. 777, 784, 239 P.3d 1109 (2010).

An action "can only be commenced" within six years "after the cause of action has accrued." RCW 4.16.005. The six-year statute of limitations on a deed of trust accrues "when the party is entitled to enforce the obligations of the note." Wash. Fed., Nat'l Ass'n v. Azure Chelan LLC, 195 Wn. App. 644, 663, 382 P.3d 20 (2016).

Cedar West contends the six-year statute of limitations on the promissory note begins to run on the date of the first missed payment on June 1, 2010 and bars foreclosure on the Deed of Trust that secured the promissory note. We considered and rejected the same argument in Edmundson.

In Edmundson, we considered when the six-year statute of limitations period begins on a deed of trust payable in installments. The borrowers argued the statute of limitations for all sums owed on an installment note accrued on the date of the first missed payment. Edmundson, 194 Wn. App. at 929.

8

We addressed the dispositive distinction between a demand promissory note and an installment promissory note. Edmundson, 194 Wn. App. at 927-32. A demand promissory note is payable on the date of execution. Edmundson, 194 Wn. App. at 929.

> "An instrument is payable immediately if no time is fixed and no contingency specified upon which payment is to be made. A demand note is payable immediately on the date of its execution—that is, it is due upon delivery thereof; and, unless a statute declares otherwise, or a contrary intention appears expressly or impliedly upon the face of the instrument, a right of action against the maker of a demand note arises immediately upon delivery and no express demand is required to mature the note or as a prerequisite to such right to action, commencement of a suit being sufficient demand for enforcement purposes."

Edmundson, 194 Wn. App. at 929[4] (quoting GMAC v. Everett Chevrolet, Inc., 179 Wn. App. 126, 135, 317 P.3d 1074, review denied, 181 Wn.2d 1008, 335 P.3d 941 (2014)).

Relying on the Washington Supreme Court decision in Herzog v. Herzog, 23 Wn.2d 382, 161 P.2d 142 (1945), we concluded that unlike a demand note, the six-year statute of limitations on an installment promissory note accrues for each monthly installment from the time it becomes due. Edmundson, 194 Wn. App. at 930 (citing Herzog, 23 Wn.2d at 388).

> In Herzog v. Herzog, the supreme court addressed when the six-year statute of limitations on a written agreement accrues. The court first distinguished a demand note from an installment note. The court stated that the statute of limitation accrues on a demand note when it is executed.
> But the obligation before the supreme court in that case was not a demand note. The note before the court provided for installment payments. Accordingly, the court held that "when recovery is sought on an obligation payable by installments, the statute of limitations runs against each installment from the time it becomes due; that is, from the time when an action might be brought to recover it."

Edmundson, 194 Wn. App. at 930[5] (quoting Herzog, 23 Wn.2d at 388).

---

[4] Internal quotation marks omitted.

[5] Footnote omitted.

We adhere to the decision in Edmundson and hold the statute of limitations accrues for each monthly installment from the time it becomes due.[6] See also Merceri, 4 Wn. App. 2d at 759; accord 25 DAVID K. DEWOLF, KELLER W. ALLEN, & DARLENE BARRIER CARUSO, WASHINGTON PRACTICE: CONTRACT LAW AND PRACTICE § 16:21, at 511 (3d ed. 2014) ("Where a contract calls for payment of an obligation by installments, the statute of limitations begins to run for each installment at the time such payment is due."); 31 RICHARD A. LORD, WILLISTON ON CONTRACTS § 79:17, at 338 (4th ed. 2004) ("A separate cause of action arises on each installment, and the statute of limitations runs separately against each, except where the creditor has a right to accelerate payments on default and does so."); 18 WILLIAM B. STOEBUCK & JOHN W. WEAVER, WASHINGTON PRACTICE: REAL ESTATE: TRANSACTIONS § 20.10, at 61 (2d ed. Supp. 2018) ("Where there has been no explicit acceleration of the note, the statute of limitations does not run on the entire amount due and non-judicial foreclosure can be begun within six years of any particular installment default and the amount due can be the then principal amount owing."). Because Allen did not pay the monthly installment amount due on June 1, 2010 or thereafter, the statute of limitations for each missed payment accrued and the six-year statute of limitations began to run on the date the payment was due.

Cedar West cites RCW 4.16.170 to argue a nonjudicial foreclosure action does not toll the statute of limitations. RCW 4.16.170 states, in pertinent part, "For the purpose of tolling any statute of limitations an action shall be deemed commenced when the complaint is filed or summons is served whichever occurs first." Cedar West asserts that because a nonjudicial foreclosure action is not commenced by filing a complaint or

---

[6] Contrary to the assertion of Cedar West, Herzog and Edmundson did not adopt an exception to the six-year statute of limitations for nonjudicial foreclosure on a deed of trust.

serving a summons, a nonjudicial foreclosure action does not toll the statute of limitations. We disagree.

The Deeds of Trust Act (Act), chapter 61.24 RCW, governs actions to enforce a promissory note or other debt instrument that is secured by a deed of trust. Walker v. Quality Loan Serv. Corp. of Wash., 176 Wn. App. 294, 305, 308 P.3d 716 (2013). The Act furthers three basic objectives: an efficient and inexpensive nonjudicial foreclosure process, adequate opportunity to prevent wrongful foreclosure, and promotion of the stability of land titles. Cox v. Helenius, 103 Wn.2d 383, 387, 693 P.2d 683 (1985). Because the Act "dispenses with many protections commonly enjoyed by borrowers under judicial foreclosures, lenders must strictly comply with the statutes and courts must strictly construe the statutes in the borrower's favor." Albice v. Premier Mortg. Servs. of Wash., Inc., 174 Wn.2d 560, 567, 276 P.3d 1277 (2012).

Even if commencement of the nonjudicial foreclosure action tolled the running of the six-year statute of limitations, Cedar West argues the October 18, 2016 Notice of Trustee's Sale and not the October 7, 2015 notice of default tolled the statute of limitations.

RCW 61.24.030 sets forth the mandatory requirements for nonjudicial foreclosure. As a prerequisite to a trustee's sale, the plain language of RCW 61.24.030(8) states the lender or trustee shall transmit a written notice of default to the borrower and grantor at least 30 days before a notice of trustee's sale is recorded. Former RCW 61.24.030 (2012) states, in pertinent part:

> It shall be requisite to a trustee's sale:
>     . . . .
>     (8) That at least thirty days before notice of sale shall be recorded, transmitted or served, written notice of default shall be transmitted by the

11

beneficiary or trustee to the borrower and grantor at their last known addresses by both first-class and either registered or certified mail, return receipt requested, and the beneficiary or trustee shall cause to be posted in a conspicuous place on the premises, a copy of the notice, or personally served on the borrower and grantor. This notice shall contain the following information:

(a) A description of the property which is then subject to the deed of trust;

(b) A statement identifying each county in which the deed of trust is recorded and the document number given to the deed of trust upon recording by each county auditor or recording officer;

(c) A statement that the beneficiary has declared the borrower or grantor to be in default, and a concise statement of the default alleged;

(d) An itemized account of the amount or amounts in arrears if the default alleged is failure to make payments;

(e) An itemized account of all other specific charges, costs, or fees that the borrower, grantor, or any guarantor is or may be obliged to pay to reinstate the deed of trust before the recording of the notice of sale;

(f) A statement showing the total of (d) and (e) of this subsection, designated clearly and conspicuously as the amount necessary to reinstate the note and deed of trust before the recording of the notice of sale;

(g) A statement that failure to cure the alleged default within thirty days of the date of mailing of the notice, or if personally served, within thirty days of the date of personal service thereof, may lead to recordation, transmittal, and publication of a notice of sale, and that the property described in (a) of this subsection may be sold at public auction at a date no less than one hundred twenty days in the future, or no less than one hundred fifty days in the future if the borrower received a letter under RCW 61.24.031;

(h) A statement that the effect of the recordation, transmittal, and publication of a notice of sale will be to (i) increase the costs and fees and (ii) publicize the default and advertise the grantor's property for sale;

(i) A statement that the effect of the sale of the grantor's property by the trustee will be to deprive the grantor of all their interest in the property described in (a) of this subsection;

(j) A statement that the borrower, grantor, and any guarantor has recourse to the courts pursuant to RCW 61.24.130 to contest the alleged default on any proper ground.

The purpose of the notice of default is to notify the debtor that the amount owed is in default and there is a statutory right to cure the default before recording a notice of trustee's sale. <u>Koegel v. Prudential Mut. Sav. Bank</u>, 51 Wn. App. 108, 112, 752 P.2d

385 (1988); Leahy v. Quality Loan Serv. Corp. of Wash., 190 Wn. App. 1, 7, 359 P.3d 805 (2015). The written notice of default must provide pertinent information, including "[a]n itemized account of the amount or amounts in arrears" and the right to cure. RCW 61.24.030(8)(a)-(l). The Act does not require the lender or the trustee to record the notice of default.

The notice of trustee's sale "must be recorded to give notice to the world that a foreclosure sale is scheduled for a specific date." Leahy, 190 Wn. App. at 7. In contrast to the notice of default, the notice of trustee's sale must include the amount in arrears; the right to cure; and the date, time, and location of the trustee's sale. RCW 61.24.040(2)(d).

The trustee may postpone the foreclosure sale for up to 120 days but not beyond the 120-day period. RCW 61.24.040(10). After the 120-day period expires, a new trustee's sale must be scheduled and a new notice of trustee's sale issued and recorded to ensure potential buyers are informed of the new sale date. Leahy, 190 Wn. App. at 7; Albice, 174 Wn.2d at 568. The Act does not require the lender to transmit a new notice of default before each new notice of trustee's sale. Leahy, 190 Wn. App. at 5.

The commencement of a nonjudicial foreclosure proceeding tolls the six-year statute of limitations period. Bingham v. Lechner, 111 Wn. App. 118, 131, 45 P.3d 562 (2002); Edmundson, 194 Wn. App. at 930. The Act requires that at least 30 days elapse after transmitting the notice of default before recording a notice of trustee's sale.

But the Act does not establish a deadline for recording the notice of trustee's sale.[7]

When the nonjudicial foreclosure action tolls the statute of limitations is a factual inquiry.

Edmundson has been interpreted too broadly to mean filing a notice of default definitively tolls the statute of limitations. In Edmundson, we concluded that transmitting the notice of default shortly before the expiration of the six-year statute of limitations followed by timely recording a notice of trustee's sale "is all that is required under the circumstances of this case." Edmundson, 194 Wn. App. at 930.[8]

> [T]his notice [of default] is evidence of resort to the remedies of the Deeds of Trust Act for the defaults of the Edmundsons under this deed of trust. This preceded the running of the six-year period of the statute of limitations. That is all that is required under the circumstances of this case.

Edmundson, 194 Wn. App. at 930 (citing RCW 61.24.030(8)).

In Bingham, we held that recording the notice of trustee's sale tolled the statute of limitations but not indefinitely. Bingham, 111 Wn. App. at 131. In Bingham, the trustee recorded a notice of trustee's sale but did not hold the trustee's sale. Bingham, 111 Wn. App. at 131. Because the trustee did not continue the sale, we concluded the statute of limitations restarted either on the date scheduled for the foreclosure or the last day to which it could have been continued, 120 days later. Bingham, 111 Wn. App. at 131.

We hold that after filing a notice of default, the lender must act diligently to pursue and perfect nonjudicial foreclosure remedies under the Act. Here, the record shows the lender transmitted the notice of default to the borrower on October 7, 2015. The notice states the amount in arrears is $72,988.92. On October 18, 2016, the

---

[7] We recognize the legislative prerogative to establish a deadline.
[8] Emphasis added.

Trustee recorded the Notice of Trustee's Sale. The Notice of Trustee's Sale states the amount in arrears is $97,163.75. Nationstar concedes nothing in the record shows Nationstar took any steps to pursue nonjudicial foreclosure for over a year after the notice of default was transmitted to the borrower. Because of this unexplained delay and consistent with the statutory right to notice of the amount in default and the right to reinstate and cure, under the circumstances of this case, we conclude the Notice of Trustee's Sale and not the notice of default tolled the statute of limitations. Because the statute of limitations begins to run on each installment payment from the date it is due, Nationstar is entitled to foreclosure on installment payments due on and after November 1, 2010.

We affirm dismissal of the quiet title action and the order allowing the Trustee to schedule the nonjudicial foreclosure sale.

WE CONCUR: